BILAL A. ESSAYLI
Acting United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
        1400/1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3667/3535/0813
        Facsimile: (213) 894-0142
        E-mail:    ian.yanniello@usdoj.gov
                   greg.staples@usdoj.gov
                   daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(B)-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT DURK BANKS' MOTION IN LIMINE TO EXCLUDE PROPOSED 404(B) EVIDENCE AND DEFENDANT DEANDRE WILSON'S MOTION FOR SEVERANCE |
| v. | |
| DURK BANKS, et al., | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its Omnibus Opposition to Defendant Durk Banks' Motion in Limine to Exclude Government's Proposed 404(b) Evidence (Dkt. 258) and Defendant Deandre Wilson's Motion for Severance (Dkt. 242) in the above-captioned case. The Motion to Exclude is joined by defendants Wilson, Lindsey, and Houston. The Motion for Severance is joined by defendants Lindsey and Houston. The government submits that its

omnibus response furthers efficiency and judicial economy, as the factual and legal issues substantially overlap.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 27, 2025          Respectfully submitted,

                                 BILAL A. ESSAYLI
                                 Acting United States Attorney

                                 ALEXANDER B. SCHWAB
                                 Assistant United States Attorney
                                 Acting Chief, Criminal Division


                                 _/s/_____
                                 IAN V. YANNIELLO
                                 GREGORY W. STAPLES
                                 DANIEL H. WEINER
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTION                                                                          PAGE

TABLE OF AUTHORITIES.................................................................iii

TABLE OF AUTHORITIES (CONT'D).......................................................iv

TABLE OF AUTHORITIES (CONT'D).......................................................v

TABLE OF AUTHORITIES (CONT'D).......................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES................................................1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT..........................................1

II.   LEGAL BACKGROUND..............................................................4

      A.    Inextricably Intertwined Evidence.......................................4

      B.    Rule 404(b) Evidence....................................................5

III.  THE GOVERNMENT'S PROPOSED EVIDENCE IS NECESSARY TO PROVE
      CORE ISSUES IN THIS TRIAL.....................................................6

      A.    Evidence of Defendant Banks' and OTF's Rivalry with
            T.B. is Inextricably Intertwined with the Murder and
            Stalking Charges........................................................6

      B.    Evidence that OTF Members --- Including Defendant
            Banks ▆▆▆▆▆▆ --- Attempted to Kill T.B. in May 2021
            Is Direct Evidence of the Stalking Charge..............................10

      C.    Evidence Related to OTF's Structure and Defendant
            Banks' Control Over OTF Members Is Necessary to Prove
            Identity, Intent, Modus Operandi, and Absence of
            Mistake................................................................11

      D.    The Government Must Be Permitted to Introduce Certain
            of Defendant Banks' Lyrics That Are Highly Probative
            Of Disputed Issues In This Case........................................16

      E.    Evidence Showing a 2022 Murder In Chicago Was
            Motivated By Money Linked to OTF and Defendant Banks....................18

      F.    The Requirements of Rule 404(b) Are Met for Evidence
            Described Above........................................................20

            1.    The Acts Are Not Too Remote in Time..............................21

            2.    The Acts Are Based on Sufficient Evidence........................21

            3.    The Other Acts Are Sufficiently Similar to the
                  Charged Offense..................................................22

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                              PAGE

       4.   The Rule 403 Balancing Test Favors Admission........23

  G.   The Government's 404(b) Notice is Sufficient.............24

IV.  SEVERANCE IS LEGALLY AND FACTUALLY UNWARRANTED................25

  A.   Legal Standard for Severance............................25

  B.   Severance is Inappropriate Because the Government's Proposed Evidence is Relevant to all Defendants' Identity, Motive, Intent, Plan, Preparation, and Knowledge.............................................27

V.  CONCLUSION..................................................29

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

CASES:

Huddleston v. United States,
    485 U.S. 681 (1988) ............................................. 21

United States v. Aliaga,
    617 F. App'x 971 (11th Cir. 2015) .............................. 15

United States v. Ayers,
    924 F.2d 1468 (9th Cir. 1991) ............................ 5, 15, 21

United States v. Bailey,
    696 F.3d 794 (9th Cir. 2012) .................................... 5

United States v. Bengali,
    11 F.3d 1207 (4th Cir. 1993) ................................... 14

United States v. Blitz,
    151 F.3d 1002 (9th Cir. 1998) .................................. 24

United States v. Collins,
    90 F.3d 1420 (9th Cir. 1996) .................................... 5

United States v. Cruz-Garcia,
    344 F.3d 951 (9th Cir. 2003) .................................... 5

United States v. Curtin,
    489 F.3d 935 (9th Cir. 2007) .................................... 5

United States v. DeGeorge,
    380 F.3d 1203 (9th Cir. 2004) ................................... 4

United States v. Ehmer,
    87 F.4th 1073 (9th Cir. 2023) .................................. 18

United States v. Escalante,
    637 F.2d 1197 (9th Cir. 1980) .................................. 26

United States v. Fernandez,
    388 F.3d 1199 (9th Cir. 2004) .................................. 26

1

**TABLE OF AUTHORITIES (CONT'D)**

2   <u>DESCRIPTION</u>                                                      <u>PAGE</u>

3

4   <u>United States v. Hadley</u>,
    918 F.2d 848 (9th Cir. 1990) ..................................... 21

5

6   <u>United States v. Hankey</u>,
    203 F.3d 1160 (9th Cir. 2000) .................................... 23

7   <u>United States v. Hill</u>,
    953 F.2d 452 (9th Cir. 1991) ..................................... 14

8

9   <u>United States v. Hinton</u>,
    31 F.3d 817 (9th Cir. 1994) ...................................... 21

10

11  <u>United States v. Joetzki</u>,
    952 F.2d 1090 (9th Cir. 1991) .................................... 28

12  <u>United States v. Johnson</u>,
    132 F.3d 1279 (9th Cir. 1997) ............................ 11, 21, 22

13

14  <u>United States v. Jones</u>,
    982 F.2d 380 (9th Cir. 1992) ..................................... 14

15

16  <u>United States v. Jourdain</u>,
    433 F.3d 652 (8th Cir. 2006)................................... 14, 19

17  <u>United States v. Loftis</u>,
    843 F.3d 1173 (9th Cir. 2016) ..................................... 4

18

19  <u>United States v. Manning</u>,
    56 F.3d 1188 (9th Cir. 1995) ..................................... 24

20

21  <u>United States v. McCourt</u>,
    925 F.2d 1229 (9th Cir. 1991) ..................................... 7

22

23  <u>United States v. McDonald</u>,
    576 F.2d 1350 (9th Cir. 1978) .................................... 15

24  <u>United States v. Mills</u>,
    704 F.2d 1553 (11th Cir. 1983) .................................... 7

25

26  <u>United States v. Moore</u>,
    639 F.3d 443 (8th Cir. 2011) ..................................... 17

27

28

**TABLE OF AUTHORITIES (CONT'D)**

DESCRIPTION                                                              PAGE

United States v. Nelson,
    137 F.3d 1094 (9th Cir. 1998) ................................... 28

United States v. O'Brien,
    601 F.2d 1067 (9th Cir. 1979) ................................... 24

United States v. Ono,
    918 F.2d 1462 (9th Cir. 1990) ................................... 21

United States v. Parker,
    549 F.2d 1217 (9th Cir. 1977) ................................... 23

United States v. Peyton,
    28 F. App'x 655 (9th Cir. 2002) ................................. 24

United States v. Pierce,
    785 F.3d 832 (2d Cir. 2015) ..................................... 16

United States v. Pipola,
    83 F.3d 556 (2d Cir. 1996) ...................................... 14

United States v. Polizzi,
    801 F.2d 1543 (9th Cir. 1986) ............................... 25, 26

United States v. Ross,
    886 F.2d 264 (9th Cir. 1989) .................................... 21

United States v. Santiago,
    46 F.3d 885 (9th Cir. 1995) .................................... 7, 9

United States v. Serang,
    156 F.3d 910 (9th Cir. 1998) .................................... 10

United States v. Stinson,
    647 F.3d 1196 (9th Cir. 2011) ................................... 25

United States v. Stuckey,
    253 F. App'x 468 (6th Cir. 2007) ............................... 18

United States v. Tai,
    994 F.2d 1204 (7th Cir. 1993) ................................... 15

**TABLE OF AUTHORITIES (CONT'D)**

DESCRIPTION                                                                      PAGE

United States v. Tootick,
    952 F.2d 1078 (9th Cir. 1991) ................................... 26

United States v. Vizcarra-Martinez,
    66 F.3d 1006 (9th Cir. 1995) ................................ 4, 10

United States v. Vo,
    413 F.3d 1010 (9th Cir. 2005) .............................. 5, 22

United States v. Voorhies,
    658 F.2d 710 (9th Cir. 1981) ................................... 15

United States v. Wells,
    879 F.3d 900 ................................................... 15

United States v. Williford,
    764 F.2d 1493 (11th Cir. 1985) ................................. 9

Wisconsin v. Mitchell,
    508 U.S. 476 (1993) ........................................... 18

Zafiro v. United States,
    506 U.S. 534 (1993) ....................................... 26, 27

RULES:

Fed. R. Crim. P. 14(a) ........................................... 25

Fed. R. Evid. 404(b)(2) ........................................... 5

Rule 404(b) ................................................... 21, 24

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3         The Second Superseding Indictment ("SSI") charges defendants

4    with, among other crimes, Murder-for-Hire Resulting in Death,

5    Conspiracy to Commit Murder-for-Hire Resulting in Death, and Stalking

6    Resulting in Death.  Trial is set to begin on January 20, 2026.

7         At trial, the defendants cannot credibly dispute that T.B. and

8    his entourage were stalked for hours across Los Angeles, and that

9    S.R. was brazenly murdered in broad daylight by three of the

10   stalkers.  Rather, the disputed facts and the crux of the trial will

11   be *who* ordered and participated in the calculated murder, and *why*?

12   The SSI contains core allegations necessary to answer these questions

13   and to prove the government's case, including: (1) evidence

14   establishing motive, including that in 2020, Dayvon Bennett aka King

15   Von, a high-ranking OTF member and close friend of defendant Banks,

16   was shot and killed following a physical altercation with T.B. at a

17   nightclub in Atlanta, Georgia, SSI ¶ 3; and (2) evidence about

18   defendant Banks' leadership of OTF, which operates both as a

19   legitimate music enterprise with a group of members (including

20   defendant Banks) who operate consistent with a street gang seeking

21   revenge and perpetuating violence on behalf of OTF.

22        Despite the obvious materiality of these case-dispositive

23   issues, defendant Banks' motion seeks to exclude *essentially all*

24   *evidence* related to them, effectively blinding the jury to evidence

25   necessary to tell a coherent and accurate story about S.R.'s murder.

26   Among other things, evidence proving these core allegations is

27   necessary to explain why the Los Angeles murder was committed and the

28   identity, roles, and relationships of each of the co-conspirators ---

                                    1

including defendant Banks, who attempted to conceal his participation by acting through trusted intermediaries, including defendant Wilson ███ .

The motion should be denied in its entirety for several reasons. *First*, defendant attempts to isolate each piece of disputed evidence and apply Rule 404(b), when much of the evidence is inextricably intertwined with the charges and not subject to Rule 404.  *Second*, defendant argues for exclusion because the evidence will purportedly cause a mini-trial and/or defendants' admissions (including lyrics) are subject to differing interpretations.  As set forth below, the government intends to streamline and expediently present the critical evidence at issue, mostly through witnesses --- including those cooperating with the government --- who will already be testifying at trial.  Moreover, to the extent defendants ascribe a meaning to defendants' statements that differs from the government's interpretation, that is the purpose of a jury trial.

The Court should therefore reject defendants' request to prevent the jury from hearing the following highly probative evidence, which is critical to telling a coherent and accurate story about S.R.'s murder:

- Evidence related to T.B.'s associate shooting and killing Dayvon Bennett aka "King Von" outside of an Atlanta nightclub in November 2020, see Mot. at 6-7. **This evidence proves motive and is inextricably intertwined with the charges and not subject to Rule 404(b)***;*

- That following Bennett's 2020 death, defendant Banks and OTF members faced pressure from fans to "slide for Von," referring to seeking revenge for Bennett's death, see Mot. at 15-16. **This evidence proves motive and is inextricably intertwined with the charges and not subject to Rule 404(b);**

- Defendant Banks' statements on a podcast (1) acknowledging the public pressure to "slide for Von" and (2) admitting the

2

pressure subsided after the Los Angeles murder of S.R., noting "[f]or some reason I just don't see them comments no more . . . for some odd reason . . .", see Mot. at 13-14. **This evidence is a party admission and otherwise inextricably intertwined with the charges and not subject to Rule 404(b);**

- Evidence related to OTF's structure and defendant Banks's control over OTF members, including two text threads in which defendant Banks discusses violence targeted against rivals, see Mot. at 20-22. **This evidence is inextricably intertwined with the charges and material to proving the relationship among co-conspirators, identity, intent, plan, modus operandi and absence of mistake;**

- Evidence related to certain of defendant Banks' lyrics (i.e., admissions) about placing bounties and greenlighting violence, see Mot. at 11, 25. **This evidence is a party admission and otherwise material to proving identity, intent, plan, modus operandi and absence of mistake; and**

- Evidence showing a 2022 Chicago murder was motivated by money linked to OTF and defendant Banks, see Mot. at 16. **This evidence is material to proving identity, intent, plan, modus operandi and absence of mistake.**

For the reasons described below, the Court should reject the motion in full so the government can prove these core allegations integral to its case and present a coherent story to the jury.

For substantially similar reasons, the Court should also deny defendants Wilson, Lindsey, and Houston's request for severance. These defendants fail to demonstrate any unfair prejudice --- in a conspiracy trial --- from the introduction of evidence showing how the conspiracy operated, the relationship between co-conspirators, and the motive for the conspiracy. Any concern for unfairness can be addressed through limiting instructions from the Court, as trial courts routinely do and courts of appeal routinely affirm. The consumption of court time for multiple trials far outweighs any risk of unfair prejudice in this case. The motion to sever should be denied.

3

## II.   LEGAL BACKGROUND[1]

### A.   Inextricably Intertwined Evidence

The Ninth Circuit has long permitted the government to offer a complete picture of the charged crime.  "A jury is entitled to know the circumstances and background of a criminal charge.  It cannot be expected to make its decision in a void -- without knowledge of the . . . circumstances of the acts which form the basis of the charge." United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992).

Accordingly, evidence that is "inextricably intertwined" with the charged conduct is admissible without regard to the "other crimes" requirement of Federal Rule of Evidence 404(b).  United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004).  The exclusion of "inextricably intertwined" facts from the ambit of Rule 404(b) is because the evidence is "offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the excused."  United States v. Loftis, 843 F.3d 1173, 1176 (9th Cir. 2016).

The Ninth Circuit recognizes two kinds of inextricably intertwined evidence: (1) evidence which "constitutes a part of the transaction that serves as the basis for the criminal charge," and (2) evidence that is "necessary" to "permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995).  With respect to the latter, the Ninth Circuit has held that "it is obviously necessary in certain cases for the

---

[1] The government's opposition to defendants' motion to dismiss for vagueness includes a thorough summary of the allegations in the SSI, which the government incorporates herein by reference.

government to explain either the circumstances under which particular
evidence was obtained or the events surrounding the commission of the
crime."  Id. at 1013; see also United States v. Collins, 90 F.3d
1420, 1428 (9th Cir. 1996) (evidence is admissible "for the purpose
of providing the context in which the charged crime occurred").

### B.    Rule 404(b) Evidence

Under Rule 404(b), evidence of a defendant's prior crimes or
wrongful acts may not be introduced to show bad character, but it is
admissible to show motive, opportunity, intent, plan, knowledge,
absence of mistake, or lack of accident.  Fed. R. Evid. 404(b)(2);
United States v. Bailey, 696 F.3d 794, 799 (9th Cir. 2012).  The
Ninth Circuit has consistently held that Rule 404(b) is a "rule of
inclusion," which permits the admission of other relevant crimes or
acts "except where it tends to prove only criminal disposition."
United States v. Ayers, 924 F.2d 1468, 1472-73 (9th Cir. 1991)
(cleaned up); United States v. Cruz-Garcia, 344 F.3d 951, 954 (9th
Cir. 2003) (same).

Other acts evidence is admissible under Rule 404(b) if: "(1) the
evidence tends to prove a material point; (2) the prior act is not
too remote in time; (3) the evidence is sufficient to support a
finding that the defendant committed the other act; and (4) (in cases
where knowledge and intent are at issue) the act is similar to the
offense charged."  United States v. Vo, 413 F.3d 1010, 1018 (9th Cir.
2005) (cleaned up).  "Once it has been established that the evidence
offered serves one of the [404(b)] purposes, the . . . 'only'
conditions justifying the exclusion of the evidence are those
described in Federal Rule of Evidence 403: unfair prejudice,
confusion of the issues, misleading the jury, undue delay, waste of

5

time, or needless presentation of cumulative evidence."  <u>United States v. Curtin</u>, 489 F.3d 935, 944 (9th Cir. 2007).

**III.  THE GOVERNMENT'S PROPOSED EVIDENCE IS NECESSARY TO PROVE CORE ISSUES IN THIS TRIAL**

**A.    Evidence of Defendant Banks' and OTF's Rivalry with T.B. is Inextricably Intertwined with the Murder and Stalking Charges**

Defendant Banks concedes that "most of the [government's] proposed evidence would not properly fall within the purview of [] Rule 404(b)."  (Mot. at 4.)  The government agrees.  That is why the government's preliminary disclosure[2] stated that the motive-related evidence of OTF's and defendant Banks' rivalry with T.B. was direct evidence of, and inextricably intertwined with, the murder charges in the SSI, which should be admitted against all defendants. (See Mot., Ex. A at 2.)

The government seeks to introduce two discrete categories of motive-related evidence that are necessary to explain the events surrounding S.R.'s murder: (i) evidence related to the murder of Bennett in November 2020 and defendant Banks' and his OTF co-conspirators' rivalry with T.B.; (ii) the public pressure ---

---

[2] The Court-ordered deadline for the government to provide notice of its intent to introduce evidence under Rule 404(b) is November 17, 2025.  In August 2025, the government provided defendants with an early, preliminary disclosure of certain acts the government intends to prove at trial.  This preliminary disclosure was made as a compromise to accommodate defendants' request to provide advance notice of other "large events" (<u>e.g.</u>, additional assaults or murders) that the government would seek to introduce at trial.  Accordingly, on September 1, 2025 --- over two months before the Court-ordered 404(b) disclosure deadline --- the government provided its preliminary notice.  Rather than identify what portions of the preliminary notice he believed were insufficient or wait until the government provided any updated notice in mid-November, defendant filed this motion, seeking wholesale exclusion of evidence in the preliminary notice.

1   including from defendant Banks' and OTF's fans who repeatedly and

2   publicly demanded that Banks exact revenge by "sliding for Von" for

3   Bennett's death; and (iii) statements and/or admissions the

4   defendants[3] made about "Sliding for Von" and fan pressure.

5        Defendant concedes this evidence is relevant to the government's

6   theory that the OTF defendants sought revenge against T.B., but

7   argues the evidence should be excluded (1) based on inapplicable case

8   law analyzing Rule 404(b) evidence, and (2) because the introduction

9   of the evidence will purportedly result in a "mini-trial."  (See Mot.

10  at 6-7.)  Both arguments fail for multiple reasons.

11       First, contrary to defendant's claim, the motive evidence is not

12  subject to Rule 404(b).  Rule 404 exists to dissuade juries from

13  convicting a defendant because of otherwise unrelated evidence of

14  defendant's bad character.  See United States v. McCourt, 925 F.2d

15  1229, 1235-36 (9th Cir. 1991).  That rule simply has no applicability

16  for the above acts, as the government is not contending that any

17  defendant in this case killed Bennett --- the facts show someone

18  affiliated with T.B. did, which is why the evidence is relevant in

19  this case.  This motive evidence is clearly admissible, as it is

20  necessary to "explain the reason that [defendant Banks and the other

21  co-conspirators] would kill [T.B.]," and "show how and why" the

22  hitmen in this case flew across the country in search of a reward for

23  the killing.  United States v. Santiago, 46 F.3d 885, 889 (9th Cir.

24  1995); see United States v. Mills, 704 F.2d 1553, 1559 (11th Cir.

25  1983) ("To make the crime comprehensible to a jury it was necessary

26

27       [3] Defendant Banks's motion to exclude cites to statements made
    by defendant Banks; however, the government reserves the right to
28  present at trial relevant statements and admissions made by any
    defendant.

for the government to show how the Aryan Brotherhood functioned, that Mills was a member of the Aryan Brotherhood, that an affront to a fellow member might serve as an adequate motivation for Mills to kill a person whom he barely knew, and that it was possible for a member of the Brotherhood incarcerated in one federal prison to communicate the murder contract to another member in a different prison, despite mail censorship and restrictions on inter-inmate correspondence.").

Second, defendant's contention that the public comments on his social media do not bear on his state of mind or motive (Mot. at 16) is belied by his own admissions.  For example, defendant Banks rapped in one 2021 song: "They be on my page like 'slide for Von,' I know they trollin' me,"[4] an obvious reference to the scores of fans who goaded him and OTF into retaliating on his social media.[5]  Then, following S.R.'s murder, defendant appeared on a well-known podcast where he tacitly admitted his involvement.  After being asked about his rivalry with T.B. and in response to the interviewer's question about whether defendant was "triggered by the 'slide for Von' comments," defendant coyly responded, "For some reason I just don't see them comments no more . . .  for some odd reason . . .  might be the water . . . we here though."[6]  These direct admissions --- which

---

[4] See Nardo Wick ft. Lil Durk, 21 Savage, & G Herb, "Who Want Smoke??", available at https://www.youtube.com/watch?v=U2SNwtE-0Us.

[5] As discussed below, defendant's contention that introducing rap lyrics will be time consuming is wrong.  Defendant cannot seriously dispute that he publicly rapped and embraced the lyrics. It is therefore inapposite when the lyrics were written or who wrote the lyrics.  These statements are direct admissions of defendant's motive, whether they were rapped in a song, written in a diary, or sent in a text message.  Defendants, of course, are free to argue to the jury that someone else --- not defendant Banks --- wrote the lyrics or that the lyrics have a different meaning.

[6] Defendant's contention that "it is unclear what 'slide for Von' means" (Motion at 15) is belied by his own admissions.

1  show defendant Banks' state of mind and embrace of his feud with T.B.

2  --- "pertain to the chain of events explaining the context, motive

3  and set-up of the crime," and are therefore integral to the

4  government's narrative.  United States v. Williford, 764 F.2d 1493,

5  1499 (11th Cir. 1985); Santiago, 46 F.3d at 889 (defendant's

6  admission that he needed to kill someone to join Mexican Mafia

7  inextricably intertwined to show why defendant killed a stranger in

8  prison).

9       Defendant's contention that the motive evidence will create a

10  "mini trial" is similarly meritless.  The motive evidence is

11  coextensive with the presentation of the government's case, including

12  cooperating witness testimony.  For example, ████████████████

13  ██████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████.

23

24       [7] The government reserves the right to decide how it will
    introduce trial evidence, however, the government notes that ████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████.  While defendant asserts the

27  Atlanta shooting involves a "complicated officer-involved shooting
    that resulted in two deaths and several others shot," the government

28  does not intend to introduce facts that are irrelevant to the
    defendants' motive in this case.

1       In sum, defendant offers no legitimate basis --- and no law

2   --- supporting the exclusion of the motive-related evidence.

3       **B.    Evidence that OTF Members --- Including Defendant Banks** ███
             ███ **--- Attempted to Kill T.B. in May 2021 Is Direct**

4            **Evidence of the Stalking Charge**

5       Defendant also seeks to exclude evidence related to a May 2021

6   attempt by OTF members and associates to ambush and kill T.B. at a

7   Georgia gas station.  This evidence is inextricably intertwined with

8   all charges in this case, but is also direct evidence of the stalking

9   charge in the SSI, which charges that the defendants, "beginning on a

10  date unknown," and continuing to August 19, 2022, stalked T.B. and

11  his entourage.  (SSI at Count 3.)  Like the motive evidence, the

12  government anticipates presenting this evidence in a streamlined way

13  through ███████████████.[8]

14      Such evidence is clearly relevant, material, and admissible in

15  this case.  Defendant Banks' and OTF's previous stalking and

16  attempted murder of T.B. "constitutes a part of the transaction that

17  serves as a basis for the [stalking] charge." Vizcarra-Martinez, 66

18  F.3d 1006, 1012–13 (9th Cir. 1995).  Moreover, testimony about

19  defendant Banks' associates' "prior unsuccessful attempts to [kill

20  T.B.] at [defendant Banks'] request explained both the nature of [a]

21  conspiratorial relationship, and how and why the [murder plot] was

22  set in the manner that it was." United States v. Serang, 156 F.3d

23  910, 915 (9th Cir. 1998) (evidence of two prior attempts to burn

24

25  _____

26      [8] ████████████████████████████████████

27  ████████████████████████████████████████████

28  ██████████████████████████████████████████

restaurant were inextricably intertwined with arson and conspiracy charge).

Defendant's primary contention for exclusion is that the only connection between this attempted murder and defendant Banks is ██████████████████████.  This basis for exclusion is precluded by binding Ninth Circuit law.  United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) (holding the "reliability threshold" for admissibility under Rule 404(b) "is not a high one, and the testimony of a single witness can be sufficient").  The evidence should be admitted.

**C.  Evidence Related to OTF's Structure and Defendant Banks'
Control Over OTF Members Is Necessary to Prove Identity,
Intent, Modus Operandi, and Absence of Mistake**

As detailed above, at trial the government will prove that six hitmen traveled to Los Angeles and used two cars to stalk and attempt to murder OTF rival, T.B.  Missing their target, the hitmen shot and killed S.R.  The government intends to introduce evidence to establish the structure of OTF to show the relationship among the co-conspirators and defendant Banks' leadership --- not just over OTF's legitimate music enterprise, but critically his knowledge of and involvement in OTF's violence.  As the Court referenced during defendant Banks' detention hearing, a critical factual issue in this case is whether defendant Banks ordered and participated in the murder; or, alternatively, whether the hitmen committed the murder on their own or to impress defendant Banks.

The government seeks to introduce limited, narrowly tailored evidence under Rule 404(b) showing defendant Banks' power and control over his co-conspirators, and his co-conspirators' willingness to carry out his violent threats and demands, including the following:

11

(1) a text thread showing defendant Banks told a rival "I got them hunting you . . ." which he forwarded to OTF members, including defendant Wilson, ███████████████████████████████[9] (2) a text thread showing a feud between defendant Banks and a rival in which defendant Banks told OTF members he was going to "pipe it up" (grab a gun); and (3) a voice memo from ████████████ discussing OTF structure and defendant Banks' control over money and other OTF members.

This evidence is highly relevant to material disputed issues and should be admitted. Indeed, a primary defense by defendant Banks in this case is likely to be that even if the OTF members and associates murdered S.R., defendant Banks did not know about and/or order the murder. To prove defendant Banks' intent, knowledge, plan, modus operandi, and absence of mistake, the government must be permitted to introduce limited evidence showing that defendant Banks --- not someone else within OTF --- had control over the organization, including its money, and that other OTF members would fly across country to murder another rap artist on their own.

As such, the government intends to introduce a text message thread from April 2023 in which defendant Banks sent his OTF co-conspirators, including defendant Wilson ████████, a screenshot of defendant Banks' taunting a rival: "I got them hunting you up ads better have 3ski mask on." In response, OTF members warn defendant Banks to protect himself in light of the threat, stating: "If you talk to them blood on the dm text them in vanish mode." Materially,

---

[9] The government anticipates that ███████████████████████████████████████████████████████████████

1  defendant Banks made clear in this text thread that he ("I got") ---
2  not another OTF member --- has control over OTF associates that were
3  "hunt[ing]" the rival.

4       And in a similar thread from the same month, defendant Banks and
5  his OTF associates discuss defendant Banks' heated exchange with
6  another rival gang member, with defendant Banks telling his
7  associates: "I'm finna pipe it up," <u>i.e.</u>, a common street reference
8  to the use of a firearm.[10]  In response to defendant Banks' call for
9  violence against the rival gang, ██████████████    agreed to follow
10 Banks' lead, exclaiming: "Blood it's green [emoji of car and traffic
11 light] getting shit together now no phones," referring to a "green
12 light" to act on defendant Banks' order.  And defendant Banks'
13 associates did just that: the government anticipates that ████████████
14 ████████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████
16 ██████████████████████████████████████████████.

17      These two discrete text threads are direct evidence showing
18 OTF's structure and are otherwise highly probative to prove identity,
19 intent, modus operandi, plan, and absence of mistake for defendant
20 Banks and his co-conspirators: specifically, the threads demonstrate
21 Banks' modus operandi of threatening his rivals, funding acts of
22 violence against them, and defendant Banks' control over his OTF
23 associates and his OTF co-conspirators' willingness to act on his
24 behalf.  Courts routinely admit such evidence under Rule 404(b),

25

26      [10] Regarding the "pipe it up" thread, the government expects that
27 ████████████████████████████████████████████████████████████████████
28 ████████████████████

particularly in conspiracy cases where evidence of other acts "show[s] the background and development of the conspiracy" and "would help explain why [a co-conspirator] trusted [another conspirator] enough to include him in the risky scheme." United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991); see, e.g., United States v. Jones, 982 F.2d 380, 382-83 (9th Cir. 1992), as amended (Apr. 6, 1993) (admitting prior acts because they "explain the nature of the relationship" between co-conspirators while placing "their transaction in context for the jury").

Indeed, the Eighth Circuit's decision in United States v. Jourdain is instructive.  In that case, the court affirmed the government's use of the defendant's prior solicitation of a shooting, reasoning that the evidence "was relevant to establish (1) whether the men shared a joint criminal purpose, (2) whether Jourdain had knowledge of the violence potential of his buddies and a shooting was foreseeable to Jourdain, and (3) whether the shooting of [the victim] after Jourdain confronted [the victim] could have been a mistake or accident."  433 F.3d 652, 659 (8th Cir. 2006).  So too here, where defendant Banks may claim that "he was merely present" in Los Angeles during the stalking and murder, evidence of defendant Banks' threats to other OTF rivals --- and his OTF co-conspirators' readiness to act on those threats --- is highly probative and necessary to prove, among other things, the identity, knowledge, and plan of the conspirators in this case.  See id.; see also United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) (noting that "legitimate purpose[s] for presenting evidence of extrinsic acts" under Rule 404(b) include "explain[ing] how a criminal relationship developed," and "help[ing] the jury understand the basis for the coconspirators'

14

1   relationship of mutual trust"); <u>United States v. Bengali</u>, 11 F.3d

2   1207, 1211-13 (4th Cir. 1993) (affirming admission of prior extortion

3   incident under Rule 404(b) to show intent); <u>United States v. Aliaga</u>,

4   617 F. App'x 971, 974 (11th Cir. 2015) (earlier extortion attempts

5   relevant to show defendant's "intent to obtain money from others").

6   A case cited by defendant (Mot. at 9) further supports this argument.

7   <u>United States v. Wells</u>, 879 F.3d 900. 928 (9th Cir. 2018)

8   (defendant's "background information" regarding "his relationships

9   with coworkers, his working environment and his work history [all]

10  relevant in a workplace homicide prosecution").

11       That these text messages and conduct occurred subsequent to the

12  charged conspiracy does not impact their admissibility, as "acts both

13  prior and subsequent to the indictment period may be probative of the

14  defendant's state of mind." <u>United States v. Voorhies</u>, 658 F.2d 710,

15  715 (9th Cir. 1981); <u>United States v. Ayers</u>, 924 F.2d 1468, 1473 (9th

16  Cir. 1991) (defendant's subsequent fraudulent conduct two years after

17  indictment period admissible under Rule 404(b) to show, among other

18  things, intent and identity); <u>United States v. McDonald</u>, 576 F.2d

19  1350, 1356 (9th Cir. 1978) (when defendant claimed no knowledge of

20  fraudulent activities, testimony that he subsequently participated in

21  other land fraud schemes was admitted to show knowledge and intent).[11]

22

23       [11] Defendant Banks' modus operandi of funding his associates'
    criminality is further confirmed by a seized audio message from ███

24  ████████████████████████████████████████████████████████████████████
    ██████████████████████████. He explained that "people call [Banks]

25  for money," he gives out "500, 600 thousand [] to the streets,"
    including funding his conspirators' "sliders," --- slang for stolen

26  cars used to commit crimes. The admission of such audio further
    proves identity and absence of mistake, <u>i.e.</u>, that Banks was the

27  individual who promised a reward for the killing of T.B. <u>See, e.g.</u>,
    <u>United States v. Tai</u>, 994 F.2d 1204, 1209-10 (7th Cir. 1993)

28                                              *(footnote cont'd on next page)*

                                   15

### D.    The Government Must Be Permitted to Introduce Certain of Defendant Banks' Lyrics That Are Highly Probative Of Disputed Issues In This Case

At trial, the government intends to introduce a limited set of defendant Banks' lyrics that directly bear on material issues the jury will decide in this case.[12]

Certain of the lyrics defendant Banks seeks to omit are party admissions that are inextricably intertwined with the charges in this case.  See, e.g., United States v. Pierce, 785 F.3d 832, 840 (2d Cir. 2015) (rap video admissible to show defendant's "association with members of the enterprise and his motive to participate in the charged conduct against" rival gang members).

For example, as discussed above, the government will introduce evidence that OTF members (including defendant Banks) were pressured by fans to seek revenge for Bennett's killing (e.g., to "Slide for Von").  Based on defendant Bank's motion, he plans to contest this issue and even may dispute the meaning of what the government believes is a straightforward call for revenge, see Mot. at 15 ("It is unclear what 'Slide for Von' means...").  The government must be permitted to present defendant Banks' *own statements* which dispel any ambiguity as to the meaning of "sliding for Von": "Smurk, slide slide slide.  Don't respond to shit with Von . . . I'm like, 'fuck it, you trippin', go get your gun' . . . They droppin' locations, I'm

---

(explaining, in prosecution for extortion, that evidence of defendant's prior association and employment of individual who carried out extortionate act was admissible under Rule 404(b) to show defendant's identity as person responsible for act).

[12] The government reserves the right to introduce other co-conspirators lyrics as inextricably intertwined and/or 404(b) evidence, including defendant Wilson aka "Deeski."  The government will comply with the Court's 404(b) deadline to notice any additional evidence that require notice under the rule.

getting' it done (woo-woo-woo, gang), Fuck tweetin', we slidin', the
feds are comin'."[13]  Additionally, in another recorded song seized
from ██████████████'s cell phone pursuant to a search warrant,
defendant Banks describes a scene with striking similarity to the
stalking and murder of S.R. in Los Angles, namely, referencing a
"bounty hunter" and being in Beverly Hills with machineguns
("choppers") looking for rivals.[14]

Other of defendant Banks' lyrics are similarly material to
disputed issues in this case.  A primary disputed issue, for example,
will be whether defendant Banks offered a monetary reward (the
bounty) for the hitmen to fly across the country to kill T.B.  That
defendant Banks has explicitly referenced offering payment to
"catch"[15] a rival is proof not only of defendant Banks' plan, modus
operandi, identity, and absence of mistake with respect to the
charges at issue, but also his co-conspirators eagerness to act on
the quid pro quo and accept their reward.  See, e.g., United States
v. Moore, 639 F.3d 443, 447-48 (8th Cir. 2011) (admitting violent rap
lyrics over a Rule 403 objection because the lyrics were probative of
the defendant's participation in the charged conspiracy).

---

[13] "Ahhh Ha", Lil Durk, available at
https://www.youtube.com/watch?v=_q6go0G49A0.

[14] "Scoom his Ass (ft. Boonie Moe) (Official Video)", available
at https://www.youtube.com/watch?v=HXUDCW4wECY.  Although "Scoom his
Ass" does not appear to have been officially released by defendant,
the lyrics are authentic as the government seized the audio file from
a co-conspirator's cellular phone pursuant to a federal search
warrant, which has been produced to the defense.  See Bates Media
638.

[15] "I don't want no niggas who you catch, **I want the one I paid
for** ... Trollin' ass, we shot your homie." "Gucci Mane – Rumors feat.
Lil Durk [Official Video]", available at
https://www.youtube.com/watch?v=QVn1DGgqBNo (emphasis added).

These admissions straight from defendant Banks --- regardless of when they were written or who penned them --- show intricate knowledge of the Los Angeles murder that only those involved would likely know and/or are admissions relevant to prove identity and absence of mistake in directing and promising a reward for violence against T.B.[16]  See, e.g., United States v. Stuckey, 253 F. App'x 468, 482-83 (6th Cir. 2007) ("Government introduced the rap lyrics not to show that Stuckey was of a bad character or had a propensity for violence (or another bad character trait), but to show that he killed Darbins.  Statements that Stuckey dislikes and kills "snitches," fills their bodies with holes, wraps them in blankets, and dumps them in the road provides direct evidence that Stuckey shot Darbins, wrapped his body in blankets, and dumped it in the road.").

**E.    Evidence Showing a 2022 Murder In Chicago Was Motivated By Money Linked to OTF and Defendant Banks**

The government intends to present limited, discrete evidence of a murder-for-hire charged in the Northern District of Illinois showing the hitmen's expectation to be paid by defendant Banks.  See United States v. Montgomery-Wilson, et al., Case No. CR 23-546 (N.D.

---

[16] A common theme throughout the motion is defendant asserts the purported difficulty to lay foundation for various pieces of evidence, including defendant's lyrics that were either formally released to the public or the audio files were seized pursuant to federal search warrants.  In either case, foundational testimony showing defendant --- not someone else --- made the statement will be easily satisfied. See e.g., United States v. Ehmer, 87 F.4th 1073, 1122 (9th Cir. 2023) (agent's testimony that he recognized speaker's voice and downloaded broadcasted recording between interviewer and defendant from interviewer's website was sufficient to authenticate recording even though recording had been edited for publication). Defendant's contention that the use of his lyrics runs afoul of the First Amendment is similarly meritless.  See Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993) ("The First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.")

18

1  Ill.).  These acts are directly relevant and highly probative of

2  defendant Banks' identity as the contractor for the hit on T.B., as

3  well as plan, modus operandi, and absence of mistake --- i.e., that

4  he, and not another OTF member, ordered and financed the Los Angeles

5  murder.  Specifically, the government has carefully selected narrow

6  pieces of evidence showing that two alleged shooters in the Chicago

7  case discussed payment from OTF and defendant Banks just two weeks

8  after the murder of a well-known Chicago gang member, S.M.  The

9  government intends to admit a handful of short text messages showing

10 that one shooter texted the other: "Wassup with otf . . . Wym [what

11 do you mean] they not paying . . . Did durk gave u that money," and

12 DNA and fingerprint evidence linking the shooters to the crime scene.

13 The government also intends to introduce a social media post that one

14 of the alleged shooters' posted shortly after this text thread,

15 showing him holding money while a song by defendant Banks played in

16 the background.

17     These discrete acts are highly probative to prove defendant

18 Banks' identity, plan, modus operandi, and absence of mistake to show

19 that he (and not another OTF member) ordered, directed, and financed

20 the Los Angeles murder, with a promise of a reward to his hitmen.

21 See, e.g., Jourdain, 433 F.3d at 659 (evidence of defendant's prior

22 solicitation of shooting relevant to show association with co-

23 conspirators and absence of mistake, among other things).[17]  Such

24

25     [17] Although laying the foundation to prove these discrete facts
   would potentially require three or four witnesses, the government
26 anticipates such testimony would not take up an unnecessarily lengthy
   amount of time, especially when weighed against the probative value
27 of this 404(b) evidence.  Moreover, should either of the defendants
   charged in the Chicago case plead guilty prior to the trial in this
28 case, the government would likely propose admitting certified
                              *(footnote cont'd on next page)*

evidence is particularly crucial in this case, as the government

expects the evidence at trial will show that the defendants took

significant steps to conceal their involvement in Los Angeles murder,

including by using encrypted communications and/or burner phones, and

that defendant Banks used ████████████████████████████████

███████████████████████.  As he has repeatedly done in his

pleadings, defendant Banks will undoubtedly argue that the failure to

seize direct communications about the murder purportedly shows

defendant Banks did not participate in or commit the murder.  (See,

e.g., Mot. at 2, 27 (calling the case against defendant Banks "thin,"

"fatally weak," and "born out of the government's own missteps").

These arguments further illuminate how the 2022 Chicago murder ---

and all of the evidence outlined above --- bears on critical,

disputed issues in this case.  While defendant is free to argue his

view that the government's case against him is weak, the jury must

also see and hear evidence to rebut defendant's argument that the

hitmen in this case (OTF members and associates) committed the crime

on their own accord.

    **F.    The Requirements of Rule 404(b) Are Met for Evidence
            Described Above**

    As detailed above, much of the evidence defendant seeks to

exclude is direct and/or inextricably intertwined evidence, and

therefore not subject to exclusion under Rule 404(b).  To the extent

Rule 404(b) applies, the evidence should be admitted for the

following additional reasons:

---

conviction records to establish the shooters' identity, which would
significantly streamline presentation of this evidence.

1            1.    The Acts Are Not Too Remote in Time

2        The other acts described above are not too remote in time, as

3   they all took place within approximately a year and a half of S.R.'s

4   murder.  See, e.g., United States v. Ayers, 924 F.2d 1468, 1474 (9th

5   Cir.1991) (subsequent acts ranging from nine months to two years

6   after the charged offense were not too remote); United States v. Ono,

7   918 F.2d 1462, 1465 n.2 (9th Cir. 1990) (admitting seven-year-old

8   prior conviction under 404(b)); United States v. Hadley, 918 F.2d

9   848, 851 (9th Cir. 1990) (same, regarding ten-year old act); United

10  States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (same, regarding

11  13-year old prior act).

12           2.    The Acts Are Based on Sufficient Evidence

13       There is ample evidence to prove up each of the discrete acts,

14  including digital communications and cooperator testimony.  See

15  Huddleston v. United States, 485 U.S. 681, 687 (1988) (rejecting

16  preponderance threshold for admitting 404(b) evidence as

17  "inconsistent with the structure of the Rule of Evidence and the

18  plain language of Rule 404(b)"); id. at 691 (explaining that proof of

19  other acts need only be such that "the jury reasonably could have

20  concluded" that prior acts occurred); see also United States v.

21  Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) ("This reliability

22  threshold is not a high one, and the testimony of a single witness

23  can be sufficient."); United States v. Hinton, 31 F.3d 817, 823 (9th

24  Cir. 1994) ("We are not persuaded that where a witness testifies as

25  to the defendant's prior bad acts, the jury must be presented with

26  evidence corroborating the witness' testimony to satisfy the low

27  threshold required by this part of the test.").

28

Here, the evidence sought to be admitted more than meets this low threshold.  The proof consists of: (i) defendant Banks' and his co-conspirators' own text messages discussing violence, corroborated by anticipated testimony of cooperating witnesses; (ii) defendant's own recorded admissions in his raps about bounties, the meaning of "Slide for Von," and details about stalking rivals in Beverly Hills; and (iii) discrete evidence from S.M.'s murder case showing the murder was motivated by anticipated payments by defendant Banks and/or OTF, including DNA results and text messages.  All of these categories of evidence, each of which corroborates the other, is more than enough to establish the other acts under Rule 404(b).

> 3.    The Other Acts Are Sufficiently Similar to the Charged Offense

As a threshold matter, "when offered to prove knowledge, ... the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005) (cleaned up).  Nonetheless, all of the acts set forth above are sufficiently similar to the charged conduct.  See Johnson, 132 F.3d at 1283 (holding that "past conduct need not be identical . . . but instead need only be similar enough to be probative of intent").

Here, the SSI alleges that the co-conspirators --- funded and directed by defendant Banks --- flew across the country to stalk and kill one of defendant Banks' rivals in exchange for a reward.  Each of the above-described pieces of evidence is strikingly similar conduct to that alleged here.  First, defendant Banks' text message threats and his admissions to committing violent acts in his rap

songs all demonstrate the power and control he has over his OTF co-conspirators in ordering violence, and that defendant Banks --- not another OTF member --- directed the activities of other OTF members. Indeed, the text messages and lyrics both fully embrace the influence defendant Banks wields over his confederates, such as his admissions that: "**I got** them hunting you up"; "**I don't want** no niggas who you catch, **I want the one I paid for**"; and "They droppin' locations, **I'm getting' it done** (woo-woo-woo, gang), Fuck tweetin', we slidin." Second, the response of OTF members and associates to defendant Banks' calls for action against his rivals is the same: they act at his direction, with his funds.  All of this evidence satisfies Rule 404(b)'s similarity requirement.

    4.   The Rule 403 Balancing Test Favors Admission

Rule 403 does not bar the admission of evidence of the above-described evidence.  "Relevant evidence is inherently prejudicial," and it is "only unfair prejudice, substantially outweighing probative value," that justifies "exclusion of relevant matter under Rule 403." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).

Here, the other acts are highly probative for the reasons discussed above.  Specifically, they provide critical context for the charged offenses and point to defendant Banks' and his co-conspirators' intent, identity, relationship, motive, and the manner in which the co-conspirators carried out the attempted assassination of T.B.  The fact that the evidence tends to prove the charges against defendants does not render it unfairly prejudicial.  See United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977) (Rule 404(b) evidence "'is not rendered inadmissible because it is of a highly prejudicial nature  .... The best evidence often is.'"); see

also <u>United States v. Blitz</u>, 151 F.3d 1002, 1009 (9th Cir. 1998) ("[E]ven if ... [404(b)] evidence resulted in some prejudice (and all unfavorable evidence about a defendant does), it was not 'unfair prejudice' and did not 'substantially outweigh' the high probative value of the evidence."). Moreover, any risk of unfair prejudice can be lessened by providing the jury with a limiting instruction as to the significance of the prior acts evidence. See, e.g., <u>United States v. O'Brien</u>, 601 F.2d 1067, 1070 (9th Cir. 1979) ("Limiting instructions may reduce or eliminate prejudice which would otherwise occur."); <u>United States v. Manning</u>, 56 F.3d 1188, 1197 (9th Cir. 1995) (evidence of prior bombing conviction admissible in trial for murder by mail bomb; limiting instruction indicated that court conducted balancing).

### G.    The Government's 404(b) Notice is Sufficient

Finally, defendants contend that the Court should exclude the government's proposed evidence in its preliminary disclosure because the notice was purportedly insufficient. (Mot. at 4-5.) The Court should reject this assertion out of hand for multiple reasons. First, the direct and inextricably intertwined evidence described in Section III.A-B is not subject to any notice requirement, and therefore cannot be excluded on that basis. Second, the government's notice --- although preliminary --- was nonetheless robust and satisfies Rule 404(b)'s requirement to provide "the general nature of the evidence" before trial. <u>United States v. Peyton</u>, 28 F. App'x 655, 658 (9th Cir. 2002) ("Peyton was apprised of the general nature of the evidence, in the form of names but not documentary records, well before trial. Fed. R. Evid. 404(b) advisory committee's note, 1991 Amendment ("[O]pt[ing] for a generalized notice provision which

24

requires the prosecution to apprise the defense of the general nature
of the evidence of extrinsic acts.")).  Indeed, the notice, which is
not due until November 17, 2025, provides specific pieces of evidence
that have been produced in discovery that the government intends to
admit at trial, and the bases for their admissibility.  That is all
the rule requires.

## IV.    SEVERANCE IS LEGALLY AND FACTUALLY UNWARRANTED

Defendant Wilson, joined by defendants Lindsey and Houston, has
also filed a conditional motion to sever, contending that "if the
Court were to allow the Government to introduce this evidence [in the
government's preliminary disclosure], severance is the only way to
protect Mr. Wilson's right to a fair trial."  (Mot. at 5.)
Defendants' argument that the "spillover" prejudice from the
government's evidence requires severance misconstrues the relevance
of the proposed evidence and is, in any event, legally unsupported.
This motion, too, should be rejected.

### A.    Legal Standard for Severance

Courts have uniformly expressed an overwhelming preference for
the joint trial of co-defendants charged in the same indictment.
"Defendants jointly indicted ordinarily should be jointly tried."
United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir. 1986).
Although the district court may order separate trials if a joint
trial would be prejudicial, see Fed. R. Crim. P. 14(a), the burden of
showing prejudice is high.  "Severance is appropriate under Rule 14
'only if there is a serious risk that a joint trial would compromise
a specific trial right of one of the defendants, or prevent the jury
from making a reliable judgment about guilt or innocence.'"  United
States v. Stinson, 647 F.3d 1196, 1205 (9th Cir. 2011) (quoting

Zafiro v. United States, 506 U.S. 534, 539 (1993)).  Since the possibility of some prejudice is present whenever defendants are joined for trial, the defendant bears a "heavy burden" to show "clear," "manifest," or "undue" prejudice from a joint trial.  United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir. 1991); United States v. Polizzi, 801 F.2d 1543, 1554 (9th Cir. 1986).

Severance is especially disfavored in conspiracy trials such as this one.  "[A] joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials."  United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004).

The district court has wide latitude to deny severance.  "The test for determining abuse of discretion in denying severance [] is whether a joint trial would be so prejudicial that the trial judge could exercise [her] discretion in only one way."  United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980).  The mere fact that a defendant believes he has a better chance of acquittal if tried separately does not require severance.  Zafiro v. United States, 506 U.S. 534, 540 (1993).  Defendant must "also show a violation of one of his substantive rights by reason of the joint trial," such as "unavailability of full-cross examination, lack of opportunity to present individual defenses," "denial of Sixth Amendment confrontation rights," or "failure to properly instruct the jury on the admissibility of the evidence as to each defendant."  United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980).

### B.    Severance is Inappropriate Because the Government's Proposed Evidence is Relevant to all Defendants' Identity, Motive, Intent, Plan, Preparation, and Knowledge

As detailed above, the government does not anticipate that the defendants will credibly challenge that two vehicles were used to track, stalk, and ultimately murder S.R. during the January 2026 trial.  Instead, the jury's focus will be deciding *who* ordered and participated in the Los Angeles murder, and *why*?

Defendant Wilson's severance motion is based on the mistaken view that the critical evidence described above is relevant and therefore admissible against only defendant Banks.  Not so.  Evidence showing that a high-profile member of OTF (Bennett) was shot and killed by someone affiliated with T.B. is material to proving motive for all OTF defendants, including defendants Banks, Wilson and Houston.  The motive evidence also shows why OTF members recruited others to commit the Los Angeles murder, including defendant Lindsey. Indeed, without this evidence, the jury could be misled into believing this was a random shooting at a gas station, when the murder was instead a premeditated attempt to kill OTF rival, T.B.

A majority of the remaining disputed evidence is similarly admissible against all defendants.  For example, the evidence showing defendant Banks' control and leadership over OTF (including his knowledge of and involvement in OTF's violence) shows the relationship between the co-conspirators and explains why they were willing to travel across the country to commit a murder.  The same reasoning applies to defendant Lindsey, who is alleged to have been recruited by defendant Wilson to participate in the murder in exchange for money.

27

1    Even if some of the evidence would be admissible only against a

2    particular defendant, defendants have not demonstrated the

3    insufficiency of limiting instructions.  Historically, "[t]he Supreme

4    Court has held that the risk of prejudice posed by joint trials can

5    be cured by proper jury instructions."  United States v. Nelson, 137

6    F.3d 1094, 1108 (9th Cir. 1998); see Zafiro, 506 U.S. at 540-41.  For

7    a defendant to be entitled to severance based on the "spillover"

8    effect of evidence against a co-defendant, he must "demonstrate the

9    insufficiency of limiting instructions given by the judge."  United

10   States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir. 1991).  So long as

11   the district judge provides the jury with instructions that make

12   clear which defendant is charged with each offense, the defendants

13   are not entitled to severance.  See Nelson, 137 F.3d at 1108.

14   To the extent the Court determines that evidence is admissible

15   for a limited purpose against certain trial defendants,[18] the

16   government anticipates that the Court will provide the jury with the

17   standard instructions given for trial in this district, including

18   Ninth Circuit Model Jury Instructions 3.9 (advising jury it should

19   evaluate with "greater caution" testimony from a witness who pleads

20   guilty to a crime arising out of the same events as for which the

21   defendant is on trial), Instruction 1.13 (instructing jury to give

22   separate consideration of evidence against each separate defendant),

23   and Instruction 6.13 (advising jury to give separate consideration of

24   multiple counts against multiple defendants).  There is no indication

25

26

27

28
    [18] The severance motion is also premature, as it is unclear if
    all defendants will even proceed to trial and the Court has not yet
    ruled on defendant Banks' motion to exclude.

that these instructions, including any additional curative instructions the Court may see fit to give, would be insufficient.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny the motion to exclude and the motion to sever.