BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorneys
Acting Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:    ian.yanniello@usdoj.gov
                greg.staples@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(B)-MWF |
|---|---|
| Plaintiff, | REPLY IN SUPPORT OF GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY |
| v. | |
| DURK BANKS, et al. | |
| Defendants. | |

Plaintiff United States of America hereby files its Reply in support of its Motion to Empanel an Anonymous Jury (Dkt. 235).

//

//

This Reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 10, 2025          Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

　　　　　_/s/_　　　　　　　　　　　
IAN V. YANNIELLO
GREGORY W. STAPLES
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Juror confidentiality is just one of the security measures this Court should adopt to ensure a fair trial, prevent improper attempts to influence jurors, and to otherwise protect the judicial process. Defendants do not meaningfully grapple with the facts that support anonymity --- e.g., the violent history of defendants and their associates, OTF associates' willingness to use violence against OTF's and defendant Banks' rivals, the witness tampering that has already occurred in this case, and defendant Banks' contempt for the judicial process, including his obstruction of an investigation into his clandestine, unmonitored jail communications.  Instead, defendants brush them aside as "speculation and mischaracterization," and minimize the consequences of defendants' own words and conduct. (Opp. at 3.)

The crux of defendants' opposition is what it fails to contest or even mention: that defendant Banks instructs his willing associates to "hunt" his rivals; that defendants Banks, Wilson, and other OTF associates have already tried to influence cooperating witness testimony; and that OTF affiliates and supporters have already shown their willingness to threaten those involved in this high-profile trial.  These facts strongly weigh in favor of heightened measures to safeguard the jury's fact-finding mission and secure juror safety.  Moreover, defendants do not contest the well-established law that a thorough jury questionnaire and a neutral explanation for confidentiality adequately protect the right to meaningful voir dire.  At bottom, withholding a limited set of juror information from both parties, coupled with Ninth Circuit-approved

1

proactive measures, are constitutionally permissible steps to ensure a safe and fair trial.

## I. AN ANONYMOUS JURY WILL PROTECT THE JURY'S FACT-FINDING MISSION AND ENSURE JUROR SAFETY

Defendants attempt to isolate and downplay each of the non-exhaustive factors this Court considers when evaluating the need for juror anonymity. Their analysis misses the mark at each turn.

*First*, defendants contend that defendant Banks "has no affiliation with organized crime" and that OTF "is a record label and professional entity --- nothing more." (Opp. 8, 12.) The government does not dispute that OTF is, in part, a legitimate business operation. But OTF's and defendant Banks' public success does not contradict or undermine the material facts showing the organized nature of certain OTF associates' criminality and violence. Indeed, defendants do not contest that two shooters charged with murder in the Northern District of Illinois discussed payment from OTF and defendant Banks following the execution of a Chicago gang member[1] (Mot. at 9); that OTF associates --- including the defendants in this case --- act at defendant Banks' direction and with his funds to "hunt" and exact revenge on OTF's rivals (Mot. at 8); and that defendants and other OTF associates have violent criminal histories (Mot. at 6). Rather, defendants claim that these facts are too attenuated to demonstrate a risk to juror safety and impartiality. (Opp. at 9.) As explained in the government's motion, these facts demonstrate the capacity of defendants, OTF's associates and/or their

---

[1] The government's opposition to defendant's motion to exclude Rule 404(b) evidence provides a more robust discussion of the defendants' and OTF's connection to organized violence, which is incorporated herein by reference. (See Dkt. 274.)

2

supporters to intimidate those who may pose a risk to the liberty of OTF members, including jurors who will render a verdict in this case.[2]

*Second*, defendants proclaim that there is "**no risk** of interference with witnesses and the judicial process." (Opp. at 12) (emphasis added). But defendants fail to mention the actual interference that has occurred in this case: OTF associates' threats to, and intimidation of, suspected government witnesses (see Mot. at 11-12 in under seal filing detailing events), and defendant Banks' contempt for the judicial process as demonstrated by his obstructive conduct at the MDC (Mot. at 13). Instead of analyzing these tangible facts, defendant Banks claims that his explicit disdain for cooperating witnesses --- "I hate all rats" --- is immaterial to the Court's analysis, since unrelated public figures have purportedly made similar comments. (Opp. at 13.) But the totality of facts presented by the government show that defendants and their OTF associates have demonstrated their willingness and capability to interfere with this trial and impair the jury's factfinding mission.

*Third*, defendant's argument that "media attention [] cannot alone justify an anonymous jury" (Opp. at 15) misconstrues the government's argument. This Court's analysis considers five non-exhaustive factors and is a "peculiarly context-specific inquiry." United States v. Dinkins, 691 F.3d 358, 371 (4th Cir. 2012). Both parties agree that this case has and will continue to

---

[2] Defendants assert that there is no risk to jurors because defendants and their OTF associates identified in the government's motion are in custody. (Opp. at 12.) As described below, this contention wholly ignores the loyalty of OTF's supporters and the ability of in-custody defendants to circumvent rules designed to monitor jail communications.

3

garner significant media attention.  (Mot. at 15.)  And it is undisputed that the publicity has already led to attempts to intimidate individuals connected to this case.  (Mot. at 16.)[3]  It is therefore non-speculative that defendants, their affiliates, and/or their supporters pose a risk to the integrity of the jury's factfinding mission.[4]

Finally, defendants contend that, although the protection of juror information from the public and media may be appropriate, an anonymous jury "impairs the defense's ability to conduct meaningful voir dire, undermining the right to an impartial jury under the Sixth Amendment."[5]  (Opp. at 17.)  But potential jurors do not lose their

---

[3] Defendants state they intend to file a motion to dismiss the Indictment based on the timing of the government's disclosure of the threats to the magistrate judge and an AUSA.  (Opp. at 8 n.3.)  Defendants' assertion that the government impermissibly withheld discoverable information from the defense is categorically false.  To the extent defendants pursue this frivolous litigation, the government will provide a thorough response at that time.

[4] Defendants' citations to other high-profile cases that did not empanel an anonymous jury (Opp. at 16) similarly miss the mark.  The government does not contend that the high-profile nature of this case *alone* warrants additional juror protection.  Rather, the totality of the facts analyzed by the government in its motion support its requested measures.

Defendant Banks also repeatedly argues that he cannot be the source of a threat to jurors because he is in custody.  The contention ignores (1) his own violations of MDC rules concerning his use of other inmates' PINs to make calls, and his possession and subsequent attempt to destroy a contraband Apple Watch with cellular capabilities; and (2) the fact that threats from his supporters would be just as damaging to the juror --- and the trial itself --- as threats from a defendant.  Any threat will undermine the trial.  Preventing the leaking of jurors' personal identifying information is a paramount concern in a case where supporters have already made threats to a magistrate judge and a prosecutor.

[5] Although defendants claim that the government's citation to 28 U.S.C. § 1863 is "misplaced," numerous circuit courts have cited the statute as a basis to empanel an anonymous jury, see, e.g., United States v. Dinkins, 691 F.3d 358, 371 (4th Cir. 2012).  And, in any event, defendants do not dispute that the Ninth Circuit has
*(footnote cont'd on next page)*

expectation of privacy when they are summoned into court.  See Brandborg v. Lucas, 891 F.Supp. 352, 357 (E.D. Tex. 1995).  A "determination of the relevancy of the inquiry [into juror's backgrounds] and a balancing of the competing rights [to privacy] must be performed by the court.  While the parties have attorneys to champion their rights, the court must protect the privacy rights of the prospective jurors."  Id. at 356.  Defendants do not offer a single concrete example of how they would be prejudiced by defendants and their counsel not knowing the name and home address of a juror or the name or address of the juror's employer.  Not one of these facts goes to bias or impartiality.  The parties will be provided with the jurors' city and occupation, in addition to other non-identifying facts concerning the jurors, such as prior contacts with, or relationships with, law enforcement.  There is no need for personal identifying information, particularly considering the use of a thorough jury questionnaire.  See United States v. Barnes, 694 F.2d 121, 141 (2d Cir. 1979) ("If the giving of names and addresses had been required so that investigation could have been made in the neighborhood or from their families as to their characteristics, any semblance of an impartial jury would have been destroyed.  Fear of retaliation against them or members of their families would inevitably have been uppermost in their minds during the deliberations.").[6]

---

repeatedly affirmed the constitutionality of such measure, see, e.g., United States v. Shryock, 342 F.3d 948 (9th Cir. 2003).

[6] Indeed, "[n]either the prosecution nor the defense has the right to have voir dire conducted in such a way as to mold the jury in a way that the jury will be receptive to counsel's case." United
*(footnote cont'd on next page)*

5

Finally, defendants' counsel concede that while keeping the jurors' personal identities anonymous to the public may be appropriate, counsel should still be given access to the personal identifiers. That presents an unacceptable risk of unintended disclosure given the lack of probative value in jurors' personal information. The risk of unintended disclosure is "certainly possible in court proceedings." Brandborg, 891 F.Supp. at 354, n. 4 (citing Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975)). Defendants offer no explanation of how, sitting at counsel table with their clients while conducting voir dire, they can assure that their clients will not discover the names of the jurors. Given the risk to jurors and their families, and the trial process itself, defendants present no persuasive reason for their counsel to have the names and addresses of the potential jurors.

**II. CONCLUSION**

The government respectfully requests that this Court empanel an anonymous jury to protect prospective jurors and prevent any interference with the judicial process. Specifically, the government requests that the names, addresses, and specific places of employment not be revealed to either party.

---

States v. Padilla-Valenzuela, 896 F.Supp. 968, 972 (D. Az. 1995). This is because "the purpose of the voir dire is to ascertain disqualifications, not afford individual analysis in depth to permit a party to choose a jury that fits some mold that [counsel] believe appropriate to [counsel's] case." Id. (citing Schlinsky v. United States, 379 F.2d 735, 738 (1st Cir. 1967)).

6