# EXHIBIT C

```
                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                 (WESTERN DIVISION - LOS ANGELES)




UNITED STATES OF AMERICA,      )  CASE NO: 2:24-cr-00621-MWF-6
                               )
                Plaintiff,     )          CRIMINAL
                               )
      vs.                      )    Los Angeles, California
                               )
DURK BANKS,                    )     Thursday, May 8, 2025
                               )
                Defendant.     )   (9:42 a.m. to 10:28 a.m.)



                          HEARING RE:

           RECONSIDERATION OF BAIL / DETENTION ORDER


              BEFORE THE HONORABLE PATRICIA DONAHUE,
                 UNITED STATES MAGISTRATE JUDGE




APPEARANCES:               See Page 2


Deputy Clerk:              ████████████


Court Reporter:            Recorded; CourtSmart


Courtroom Deputy:          ████████████


Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

1        **Los Angeles, California; Thursday, May 8, 2025; 9:42 a.m.**

2                        **(Call to Order)**

3              **THE CLERK:**  Calling Case Number CR-24-621-MWF-B,

4    *United States v. Durk Banks.*

5              Counsel, please state your appearances.

6              **MR. YANNIELLO:**  Good morning, Your Honor.  Assistant

7    United States Attorneys Ian Yanniello, Danny Weiner, and Greg

8    Staples on behalf of the Government.

9              **THE COURT:**  Good morning.

10             **MR. SPEAKER:**  Morning.

11             **MR. FINDLING:**  Good morning, Your Honor.  Attorneys

12   Drew Findling, Christy O'Connor, and Jonathan Brayman on behalf

13   of Mr. Banks.

14             **THE COURT:**  Good morning.

15             **MR. SPEAKER:**  Good morning, Your Honor.

16             **THE COURT:**  All right, we are here for the hearing on

17   the Defendant's application for review of the Detention Order

18   in this matter.  I have received and reviewed Pretrial

19   Services' updated report dated today, May 8th.  I've also

20   reviewed all of the prior Pretrial Services Reports in this

21   matter.  I've also received the Defendant's Application for

22   Review, the Defendant's Memorandum in Support of his

23   Application for Reconsideration of Detention Order, Defendant's

24   Notice of Filing of Exhibit Regarding Memorandum for

25   Reconsideration of Detention Order, the Second Superseding

4

 1   Indictment, the Supplement to the Government's Opposition to

 2   Defendant's Application for Reconsideration of the Detention

 3   Order, Defendant's Reply in Support of his Application for the

 4   Detention Order, and Defendant's Notice of Filing of Exhibit B

 5   in Support of his Application for Reconsideration of the

 6   Detention Order.

 7          All right.  Starting with the Government, have I

 8   missed anything that you submitted?

 9          **MR. YANNIELLO:**  Your Honor, I may have just missed

10   it, but you mentioned a Supplement to the Opposition, we also

11   filed an Opposition, and it might be my fault for not having

12   heard Your Honor.

13          **THE COURT:**  Oh, no, it's not your -- I did receive

14   your Opposition, yes.  Anything else that I missed?

15          **MR. YANNIELLO:**  No, Your Honor.

16          **THE COURT:**  All right.  How about from the Defense,

17   did I miss anything?

18          **MR. FINDLING:**  You did not, Your Honor.

19          **THE COURT:**  All right.  Then since this is the

20   Defendant's application, we'll start with the Defense.

21          **MR. FINDLING:**  Your Honor, can I go to the podium?

22          **THE COURT:**  Yes, please.

23          **MR. FINDLING:**  Thank you, Your Honor.

24          Thank you, Your Honor.  And Your Honor, considering

25   the Court has reviewed the papers and this is an application

1   for review basically for change of circumstances, we're going

2   to keep it tight, I've already informed the Government, and

3   stay on point as to the specific issues that we're raising

4   change of circumstances.

5          Regarding the bond package, I think the Court's

6   reviewed it, there's no reason for me to just echo what's

7   already in front of you.  If you have any questions, either

8   myself or co-counsel are happy to answer those.  So I'm just

9   going to stay on point with regard to the issues that we've

10  raised, Your Honor.

11         Your Honor, you're correct that we ask for

12  reconsideration of the Court's findings of December 12th, 2024.

13  Our application is at, as you know, Dockets 136 to 138.  We

14  filed that at the similar time we filed a Motion to Dismiss at

15  Document Number 135 which is presently set to be heard on

16  June 2nd of 2025, and I'll get into that more in a second

17  because that goes as a Motion to Dismiss Superseding Indictment

18  Number One and we don't think that's rendered moot for reasons

19  I'll explain in the next few minutes.

20         But Your Honor will recall that at December 12th of

21  2024, when talking about the facts and circumstances,

22  particularly regard to the issue of dangerousness and threat to

23  the community, we talked at length about the Indictment, more

24  specifically Paragraph 6 regarding a lyrics issue.  At the time

25  we offered the Court an affidavit by a producer to show that

6

1    whoever testified in front of that particular Grand Jury

2    offered provably false information and that was an issue that

3    was the -- kind of the center of the storm.  There was two

4    objections actually in the midst of my argument by the

5    Government as to the issue.  And in fact, following up on the

6    argument that the Government made at that time, we actually

7    emailed the Government a couple weeks later in January and

8    said, hey, based on your argument if you can give us something

9    in support of what you told the Court.  They gave us some

10    information.  Nevertheless, we filed the Motion to Dismiss

11    continuing to believe that whatever was in that paragraph in

12    the introductory -- introductory paragraphs of the Indictment,

13    which were re-alleged in the conspiracy count, was provably

14    false.  And that became the foundation of the Motion to Dismiss

15    to be heard by the District Court on June 2nd and also the

16    heart of the original application that we filed on behalf of

17    Your Honor.

18            As the Court knows, subsequent to those filings we

19    received a courtesy email from the Government late last week

20    saying that the case was superseded in Superseding Indictment

21    Number Two and that Paragraph 6 of the introductory part of

22    that Indictment and re-alleged in the conspiracy was no longer

23    part of the Indictment.  And, quite frankly, our interpretation

24    of that is basic and that is that the Government no longer

25    contends that that was accurate or at least viable testimony.

7

1          And so that's one of the change of circum --

2          **THE COURT:**  Can you explain how that is relevant to

3     the detention issue?

4          **MR. FINDLING:**  Yes, I can.  So Your Honor, in the

5     original Indictment that Your Honor ruled on on June 12th --

6     excuse me, on December 12th of 2024, that Indictment had three

7     specific facts other than sweeping generalizations.  And we'll

8     go to some of those that were reviewed.  The Court reviewed a

9     lot of them at the conclusion of that hearing.  But there were

10    really only three specific facts alleged in the Indictment when

11    the Court made its decision, because one of the things you

12    referenced was your review, as would be expected, of the

13    Indictment.

14          One of them was that there was this paragraph that

15    claimed that Mr. Banks monetized and celebrated the death that

16    is at the heart of this Indictment, which we now know is

17    provably false.  That was one specific fact.  The next specific

18    fact was in Paragraph 9 of the conspiracy part of the

19    Indictment, which said that he specifically bequeathed the

20    responsibility for this, you know, giving money or reward or a

21    bounty for the death of the decedent in this case to a specific

22    co-defendant.  And the third was the reference to a text

23    message in which he said any flights that happen on or about

24    the time of this incident, any flights shouldn't have my name

25    on it.

1          The second fact which was contained in Paragraph 9 of

2    the trafficking -- of the conspiracy part of the Indictment is

3    also gone.  And so it's not -- it's not part of the Superseding

4    Indictment.

5          **THE COURT:**  I read that in the papers and I'm looking

6    at the Second Superseding Indictment and in Count One the -- as

7    to all Defendants the object of the conspiracy:

8          1.  Defendant Banks would place bounties on

9    individuals that he and other OTF members wanted to kill,

10   including T.B.

11         2.  Co-conspirators known and unknown, including

12   Defendant Banks, would recruit others to find, track, and kill

13   T.B.

14         So I wasn't -- and then in the Overt Acts:

15         Overt Act 1:  Banks using coded language told co-

16   conspirators and others that he would pay a bounty or monetary

17   reward to anyone who took part in the killing of T.B.

18         So I didn't understand your argument about the

19   language regarding the bounty no longer being charged because

20   it's clearly in the Second Superseding Indictment.

21         **MR. FINDLING:**  Your Honor, absolutely the general

22   statements that you just referenced remain.  But the Government

23   made a decision as to the specifics of this incident that is

24   the issue in this case, the specifics.  They removed

25   Paragraph 9 of the conspiracy count, which actually makes a

1  specific reference to what happened here resulting in

2  somebody's death.  The others that you referenced, a hundred

3  percent, they are still in there, but those are general

4  statements.

5           The Indictment, the difference between the first

6  Indictment, Superseding One, and Superseding Two is Superseding

7  One has sweeping generalizations, right, sweeping

8  generalizations, but it has three specific allegations as to

9  the incident that took place in August of 2022.  Two of those

10  specific references are gone.  Yes, there remains the bounty

11  general statements.  But as to the specifics, clearly when the

12  decision was made -- I can't speak for the Government on what

13  their strategy was or what they know or they don't know, but

14  when they went back on Superseding Indictment Number Two they

15  took out two very specific references to the incident of August

16  2022.

17           **THE COURT:**  With regard to the bounty, your argument

18  is the First Superseding Indictment specified who he would pay

19  the bounty to and the Second Superseding Indictment doesn't?

20           **MR. FINDLING:**  Correct, Your Honor.

21           **THE COURT:**  Okay.

22           **MR. FINDLING:**  But --

23           **THE COURT:**  All right, I understand.

24           **MR. FINDLING:**  Yes.  Yes.  Very -- it's very, very

25  specific.

1              **THE COURT:**  Why is that relevant to whether or not

2     he's a danger to the community?

3              **MR. FINDLING:**  Well, Your Honor, I appreciate that

4     question because in the finding of dangerousness it has now

5     been a half a year, it's been a half a year since we appeared

6     in front of Your Honor, and we were very careful not to -- I

7     mean you clearly notice, sure, there are times that you look

8     for change of circumstances in weeks, a month or two, but we,

9     without going into the specifics and respecting our protective

10    order, we've gone through tranches of discovery that we

11    received from the Government and to date all we can say is that

12    the only thing that exists after a half a year is sweeping

13    generalizations and so sweeping generalizations as to the

14    reason why Mr. Banks would be a threat to the community.  And

15    we are of the position that if you're going to allege

16    dangerousness there has to be some specifics.

17              You'll remember that one of the things that Your

18    Honor said at the conclusion of December 12th, you specifically

19    said when you found dangerousness you said there's no gun in

20    the hand, right, of Mr. Banks, those were your words, but there

21    are these allegations.  And nothing has changed since then and

22    our position is that there -- that in order to make a showing

23    of dangerousness to the community, if we look at 31 --18 U.S.C.

24    3142, we've got to look at the evidence.  Right?  It asks us to

25    look at the evidence.  And just putting it in an indictment

1   sweeping generalizations as why he's a general -- he's a danger

2   to the community should not be enough to keep somebody detained

3   when, as the Court -- as the Court referenced at the conclusion

4   of that hearing on December 12th, 2024, there is no criminal

5   record.  There was a robust package and continues to be a

6   robust package.

7          We have clarified one of the concerns the Court

8   articulated at the end of the hearing.  One of the things you

9   said that was an argument by the Government was that the

10  security company was more for the protection of Mr. Banks and

11  we clarified and we submitted, it's the exhibit to the Court,

12  that the security company would actually almost serve at the

13  behest of the Court to make sure -- of course, they want to be

14  concerned about his security, but make sure that, although he

15  foots the bill, that he abides by the terms and conditions of

16  whatever order is set forth by the Court.  So if the Court

17  says, hey, you're in 24/7 lockdown home confinement, that's the

18  responsibility of them.

19         So we continue to have a --

20         **THE COURT:**  I have a question.  So what you're

21  telling me about the security company is that if -- if the

22  Defendant is released and he is in his home and he seeks to in

23  some fashion violate the conditions, leave the District, leave

24  the country, your position is this security company, who he is

25  paying, is going to contact law enforcement and say he's

1    violating the conditions, come and arrest him?

2          **MR. FINDLING:**  We asked the security company to

3    clarify and that's what we submitted to the Court.  The

4    security company is --

5          **THE COURT:**  That's not clear from what the security

6    company submitted.  That's why I'm asking.

7          **MR. FINDLING:**  And that's -- that is one hundred

8    percent the position they're taking.  We told them we need to

9    know that if bond is granted by her Honor that you will report

10   to anybody, anybody that Judge Donahue says you need to report

11   to, whether it's Pretrial Services, whether it's U.S. Marshals,

12   whether it's the U.S. Attorney's Office, whether it's the

13   Court, will you be beholden to the Court to report to anybody

14   if any of the conditions, if he's smoking marijuana, if he has

15   a drink and he can't, if he leaves when he's not supposed to,

16   if you see him booking a flight, anything like that, will you

17   assume that responsibility so that your reputation is on the

18   line and they said a hundred percent.  And we asked them to --

19   and they'll subject themselves to any interview, they've

20   informed us, whether it's by the Government, whether it's

21   anybody on behalf of Pretrial Services, to assure the Court

22   that that's the responsibility that they will assume.

23          So Your Honor, regarding the -- you know, 3142

24   (g)(2), it talks to us about the weight of the evidence and

25   that's why -- that's why I reference those, because Your Honor

on December 12th of 2024 made specific reference, as I recall,
to 3142, and that's why I bring those up.  Any indictment has
the ability and usually does make sweeping generalizations.
And Your Honor appropriately at that point in time, you talked
about the fact that no one puts a gun in his hand, but we have
to look to some specifics.  And I tell you as an officer of the
Court I've tried my best, Mr. Brayman, Ms. O'Connor, everybody
in our offices has looked to find anything other than these
sweeping generalizations and all we kind of hearken back to is
the three very specific facts from the first Indictment.

We don't see anything that has discernably changed
over the course of six months.  We would expect that to do so.
And so we kind of go back to the fact that there was -- there
was community involvement from him.  There were endless good
things that were done that we shared with you.  And so we're
looking at the difference of six months ago and now and I look
at -- if I can just kind of rehash your findings at the time.
You at that time on Page 43 indicated that the presumption does
remain in the case, which we understand, and that we at that
time gave you, I think you referenced more specifically
considerable information regarding issues of flight, et cetera.

Regarding the issue of OTF, we spent a lot of time
talking about that at the time.  Only the Family.  If you
remember, I offered corporate papers.  And I appreciate you
considering that at that time.  And in your findings on that

14

time -- at that date on Page 43 you specifically said it's not

an issue before the Court whether the Defendant is or is not a

member of a gang on how his family organization is

characterized.  So while I appreciate you considering that, we

respect that finding, that at least at that time that really

wasn't an issue that you were considering.  But nevertheless,

we offered that to you and asked you to reflect back on the

fact that Only the Family, his record label is duly -- is duly

incorporated.  It was done so by two very well respected

transactional lawyers.  We presented to you at the time his

corporate relationships with two subsidiaries or divisions of

Sony.  We had both -- we had a chief operating officer present

and another corporate officer from another corporation present.

        And this is what I was reflecting about your comment

about the gun.  At the bottom of Page 43 you indicated that you

were concerned about the safety of the community and that this,

of course, is based primarily on the allegations in the First

Superseding Indictment and while the allegations are not that

the Defendant personally pulled the trigger, the allegations

are that the Defendant exercised a significant amount of

control over other individuals and those individuals were

acting at his direction.  And I can just tell you this, Your

Honor, just because you say something in an indictment and just

because you echo it over and over again doesn't make it true.

And so what I am telling you, at least our finding of all

1   counsel, is that nothing exists other than, as I keep on

2   saying, those sweeping allegations, which we don't think with

3   somebody that does not have a criminal record, that does offer

4   a robust package, that does show you that, as you recall from

5   December 12th, extensive community service, extensively there

6   trying to do the right thing, should be a reason based on six

7   months have passed, six months have transpired and really

8   nothing is different other than the reason I bring up to you

9   that we have surgically, at least from our perspective, gone

10  through Superseding One, this is all counsel, and felt that

11  there were three specific facts, two of those three are now

12  gone.  And so the only thing we have is an out of context text

13  message.  It is literally, regarding the incident of August

14  2022, when Your Honor looks at the Indictment the only single

15  thing that is left.

16          Now, I know that the Government added in the stalking

17  charge so I want to comment on that for a second.  The

18  allegations regarding the stalking charge were factually

19  already present in the first Indictment.  There's no

20  difference.  If you look at Paragraph 5 from the general --

21  from the general introductory paragraphs, right, Paragraph 5

22  really lays out the stalking allegation, it's just now it's

23  memorialized in the form of an allegation.  And Paragraph 5, of

24  course, was re-alleged in the conspiracy count.  So the

25  stalking doesn't add anything.  We know that the -- that this

1    case is all about the conspiracy charge.  So Paragraph -- in

2    our opinion the stalking is really just kind of a diversion

3    from the fact that the three specific facts were down to one.

4    Because the stalking in itself, there's no domestic

5    relationship here or anything like that.  The three specific

6    facts are literally down to one.

7            Your Honor, at that time you had indicated, if you

8    recall, and I don't think Pretrial Services changed their

9    position, that in terms of the risk of flight they did not

10   feel -- they felt, at least as to that, there could be a set of

11   conditions that would assure there would be no risk of flight.

12   I know Your Honor did not follow their recommendation but you

13   did say at that time that it was a close call.  We think that

14   we can set up the conditions, we can set them up so that will

15   not be an issue in this case, as previously articulated to the

16   Court.

17           Your Honor, one thing, I believe the Government has

18   submitted or is going to submit a 302 regarding Mr. Banks'

19   phone calls from the jail, so let me address that, let me

20   address that issue with the Court, and that is --

21           **THE COURT:**  Yeah, this information is also in the

22   Pretrial Services Report --

23           **MR. FINDLING:**  Uh-huh.

24           **THE COURT:**  -- and it's relevant because it suggests

25   that the Defendant does not respect to follow the rules at

1    the -- set by the Bureau of Prisons.

2         **MR. FINDLING:**  Yeah.  So if I can address that.

3    First, let me say, and this is not -- this is an issue and

4    anybody that does this work would say this is rampant all over

5    the United States, this issue of the phone calls is what we're

6    talking about.  Rampant.  So this is not the first case that

7    I've heard about it, either in my own case or other colleagues'

8    cases, this is something we hear -- and you know when we hear

9    about it?  We hear about it at detention hearings.  And that's

10   the case here.  All of us have gone to see Mr. Banks

11   repeatedly.  Ms. O'Connor more than all of us because she is

12   local.  And not one of us have heard from anybody at the

13   facility that there's ever been a problem regarding the issue

14   of calls.

15        We also have the ability, and it's something that

16   they're very good about, in arranging phone calls with

17   Mr. Banks.  So we always have phone calls.  And when we arrange

18   those calls, those attorney-client privileged Zoom calls, we

19   work with the facility to arrange the calls.  Nobody --

20        **THE COURT:**  I don't read the -- the Pretrial Services

21   Report is not -- the calls that are being referred to are not

22   attorney-client privileged calls.  These are using other

23   inmates phone call -- phone accounts to make calls.  My

24   conclusion from this is these are not calls with attorneys.

25        **MR. FINDLING:**  Oh, no, no, no.  I'm not saying that.

 1    I'm not saying that.  What I'm saying is every time we've gone

 2    to see him or arranged a call no one has ever said anything to

 3    us you need to talk to Mr. Banks, we have a concern about his

 4    calls.  I'm just letting you know that our presence, both

 5    physically and telephonically, is non-stop with the people at

 6    the facility.  No one has ever said anything to us about this.

 7    This is the first time we've heard.  And I can assure -- other

 8    than phone calls to a parent, phone calls to his spouse, if

 9    there were anything of concern on those calls I know that our

10    colleagues from the Government would be on the phone letting us

11    know immediately about those.  This is the first time we've

12    heard them.

13           So it's not like we're attorneys that don't show up

14    at the facility.  It's not like we're attorneys that are not in

15    contact with the facility.  Nobody at the facility has said one

16    thing to us about that.  And mind you that this is a facility

17    when we go there that has talked to us about the other problems

18    they have there and -- they have problems with drugs and all

19    that, and all we hear when we go there is nothing but praise

20    for Mr. Banks' conduct when he is there.

21           What we know from going to the facility and talking

22    to the people there is that he's committed to his faith.  What

23    we know from talking to the people at the facility is his

24    commitment to his Muslim faith.  What we know from going to the

25    facility is the seriousness in which he took Ramadan.  That's

1    all we know from the facility.

2         So other than prepping for a detention hearing, which

3    we think is -- warrants a strong showing from us on the papers

4    that we offer in a hearing in which in the wake of a Motion to

5    Dismiss on June 2nd on an issue the Government has now

6    superseded and thrown that issue out, regardless of the fact

7    that they before Your Honor fought -- fought very, very

8    aggressively on that issue and now concede that issue, now it's

9    an eleventh hour issue to look at calls and make something out

10   of we think is really not an issue.  And it's certainly not an

11   issue that should warrant when someone cannot be caged, cannot

12   be incarcerated pending trial to prevent them from being

13   released.

14        And so we just do not see that as an issue.  We just

15   see that as kind of an eleventh hour let's check on this,

16   because that happens in detention hearings all the time, that

17   at the last minute there's a check.  I don't have any

18   information that this has been an ongoing issue.  This is

19   something the agents have checked on in anticipation of this

20   hearing today.

21        So Your Honor, our position is that under 3142

22   there's just -- there is just minimal evidence in this

23   Indictment other than generalizations that would support

24   dangerousness to the community.  And we think that based on the

25   package that we set forth, and relying on what we shared with

1    you on December 12th, that he should be released on conditions

2    that the Court can establish and that we'll abide by.

3         Look, we know, and I've done this long enough to

4    know, that it is advantage Government, advantage Prosecution,

5    when you have someone accused of a crime sitting in jail

6    preparing for their trial.  And while I respect the Court's

7    Order, because you very specifically, and something that I

8    don't see very often and I respect it, you did put in your

9    Order to make sure that he is facilitated by the jail in

10   preparing for court and I appreciate you putting that in there.

11   But my belief is that it always benefits the Government to have

12   somebody incarcerated when it comes to trial preparation.  And

13   on the other hand, he's presumed innocent of everything that's

14   contained in that Indictment.  He's presumed innocent.

15        And the Court makes a great comment that there's not

16   a gun in his hand, but we all know about indictments that are

17   just listed with a laundry list of specific allegations, real

18   specific allegations as to why somebody is a threat to the

19   community.  Save the fact that there are just generalizations

20   here, we are literally in Superseding Two down to one out of

21   context text message.  It is the only specific allegation about

22   his alleged activity as to August of 2022.  We don't think that

23   that's enough to establish that somebody without a -- 32-year-

24   old man without a criminal record, irrespective of cycles,

25   because cycles amount to nothing, it is convictions, that that

1    is enough to warrant him to remain incarcerated pending his

2    jury trial.

3           **(To Co-Counsel):**  Counsel, anything else?

4         **(No audible response)**

5           Okay.

6           Your Honor, thank you for the time.

7           **THE COURT:**  All right.  Thank you, Counsel.  I

8    will -- you did note that your view that the Government is

9    benefited whether the Defendant -- if the Defendant is in

10   custody.  That's not a factor the Court considers in deciding

11   whether someone should be detained pretrial.  I appreciate your

12   argument.  That is not a factor.  And I just want to go back

13   and ask you, because I'm not sure --

14          **MR. FINDLING:**  Yes, Your Honor.

15          **THE COURT:**  -- of your position.  So according to the

16   Pretrial Services Report the Defendant repeatedly used at least

17   13 other inmate phone accounts to make phone calls from the

18   MDC, which is in violation of the BOP rules, and he continues

19   to violate the prohibition of engaging in three-way calls.  And

20   I hear your argument, which is you just learned about those and

21   in any event he's likely not the only one engaging in this

22   behavior at the MDC.  Fair?

23          **MR. FINDLING:**  Absolutely fair.

24          **THE COURT:**  Okay.  All right, thank you, Counsel.

25          **MR. FINDLING:**  Thank you, Your Honor.

1        **THE COURT:**  All right, I'll hear from the Government.

2        **MR. YANNIELLO:**  Just briefly, Your Honor.  This

3   murder case is not about Defendant's lyrics and it's not about

4   his music.  It's about his conduct.  It's about his actions and

5   it's about the steps he allegedly took when he dispatched,

6   allegedly dispatched hitmen to hunt, stalk, and kill a rival.

7        Now, Counsel -- to be clear, Counsel claims that we

8   removed those rap lyrics because we conceded something.  That's

9   not the case.  The Government could -- stands by the allegation

10  that Defendant did, in fact, commercialize his violence.  But

11  that's a question for a different day.  Whether those lyrics

12  come in at trial, that's subject to a motion in limine.  That's

13  not what the Court is addressing today.

14        The narrow issue before this Court is the Defendant

15  presented new information -- has Defendant presented new

16  information that has a material bearing on the Court's

17  Detention Order.  The answer is no.  As the Court's (inaudible)

18  made clear, in December this Court found that the evidence

19  presented showed the Defendant uses his money, influence, and

20  power to endanger individuals who he perceives as a threat.

21  That finding was based not only on the serious allegations in

22  this murder indictment, but also on the evidence presented

23  showing that the Defendant had allegedly engaged in a similar

24  murder-for-hire plot in Chicago and critically the Court also

25  considered evidence that as of the date the Defendant was

1    initially charged in this case there had already been threats

2    to witnesses and family members.  And specifics of that are

3    laid out in the Government's under seal exhibit.  Defendant has

4    failed to present any new facts that undermine the Court's

5    finding.

6            Mr. Findling's claim that the new murder indictment

7    somehow, I believe in their briefing said it was watered down

8    and today he articulated that it has been whittled down to

9    somehow a single allegation, that's just not true.  The new

10   indictment contains the same serious allegations about

11   Defendant directing and financing the killing of his rival,

12   T.B.  The new indictment contains the same allegations of

13   Defendant placing a bounty to kill T.B.  And it's immaterial

14   that the Government removed an allegation related to a payment

15   for the killing of S.R., who was not the target of Defendant's

16   bounty.

17           I would submit that the only change of consequence in

18   the new murder indictment is that Defendant now faces another

19   serious count and that count is stalking resulting in death

20   that carries a maximum penalty of life in prison.  That count

21   does not require a bounty, it does not require a payment, it

22   requires a course of conduct that would reasonably be expected

23   to cause substantial emotional distress.  The stalking and

24   ambush killing of S.R. clearly meets that, meets those

25   elements.

1          The last thing I would note is that the Court asked

2   questions about the jail calls and Defendant's continued abuse.

3   I'd note that the Government raised that issue in the initial

4   detention hearing.  It's not the first time that it's been

5   raised.

6          And as to flight, the question isn't really -- is not

7   whether Defendant's going to appear at the next court

8   appearance, it's whether any assurance -- any conditions will

9   assure his appearance at all court dates.  Will he appear at

10  the trial date?  Will he appear the last day of trial when the

11  jury is deliberating?  As the Court found previously in

12  December, evidence supports the inference that Defendant, who

13  has considerable resources, attempted to leave the United

14  States upon learning of the arrest of his co-conspirators.  He

15  tried to flee.

16         And the allegations in this murder indictment and

17  other evidence before the Court, including Defendant's

18  continued violations of jail rules, simply show he will not

19  follow the rules, let alone rules set by a company he's paying

20  for.

21         The Court should reject Defendant's request to reopen

22  the bond hearing and order Defendant remains detained.

23         **THE COURT:**  Counsel, you said that -- I was going to

24  ask you, what are the statutory maximum sentences here and, I

25  don't know, do any of these -- the charged statutes carry

1  mandatory minimums?

2      **MR. YANNIELLO:**  The stalking resulting -- or let me

3  rephrase.  The murder-for-hire resulting in death carries a

4  mandatory minimum penalty of life in prison and the stalking

5  resulting in death has a maximum life imprisonment.

6      **THE COURT:**  And Defense submitted the letter from the

7  security company.  It's somewhat vague.  I don't know if the

8  Government has a position on the use of a private security

9  company to somehow enforce the conditions of release.  I wasn't

10  entirely -- the terms in the exhibit submitted by the Defense

11  are somewhat vague.

12      **MR. YANNIELLO:**  Yes, Your Honor.  I think the

13  Government's interpretation of those kind of broad promises

14  that whatever the Court says will be enforced, simply the

15  economic incentive of the -- a private company being hired by

16  the Defendant and then going and telling on the Defendant when

17  the Defendant violates a rule, to the extent it could even

18  enforce a rule, it just isn't there.  That company would never

19  do business again.  And so the only -- based on brief research,

20  the only time the Government's seen that this -- a condition

21  like this has been imposed was in San Diego in the Fat Leonard

22  case and that ended up not working out well.

23      **THE COURT:**  All right, thank you, Counsel.

24      **MR. YANNIELLO:**  Thanks, Your Honor.

25      **THE COURT:**  Does Pretrial Services have anything that

26

1    it would like to add based on the arguments this morning?

2             **PRETRIAL SERVICES OFFICER:**  Good morning, Your Honor.

3    (indisc.) for Probation and Pretrial Services.  Nothing

4    further, Your Honor.

5             **THE COURT:**  All right, thank you.

6             **MR. FINDLING:**  Could I briefly respond?

7             **THE COURT:**  Yes, you certainly can.  If you can go to

8    the lectern, I want to be sure that the microphone --

9             **MR. FINDLING:**  Yes, Your Honor.  Thank you so much.

10            **THE COURT:**  -- catches your comments.

11            **MR. FINDLING:**  First, Your Honor, I want the Court to

12   know that in a case like this I'm always trying to be careful

13   to respect the protective order and items that are under seal

14   and I assured counsel that I would do that.  So I just want the

15   Court to know there weren't things that I was avoiding, I was

16   trying to be respectful of certain things.

17            **THE COURT:**  If there's something that you would like

18   to place on the record that you think will help your argument,

19   you can certainly come to sidebar and do it along with

20   Government counsel, if you think that that is a fact that would

21   assist your argument.  I don't want you to think the protective

22   order is somehow preventing you from making a full and complete

23   argument.

24            **MR. FINDLING:**  Your Honor, I can really state from

25   here that it's consistent -- everything that the Government

1  said a few minutes ago is really consistent with our point of

2  generalization and uncharged offenses.  So as we sit here on

3  this date in 2025 our client has this case and this case alone

4  and remains with no convictions.  And so I don't really need to

5  do that and I appreciate the Court accommodating it and I thank

6  you for that.

7            I also would request the Court remember that one of

8  the things we presented to you in December 12th of 2024 is that

9  on a case in Fulton County, Georgia, that was ultimately

10 dismissed in 2019, I believe, the Judge in that case, a

11 Superior Court Judge, Judge Farmer, continued to, I believe we

12 presented to you, lighten up the conditions for Mr. Banks

13 because Mr. Banks in that case, which was a serious case

14 ultimately dismissed, did comply with the terms and conditions

15 as set forth by Judge Farmer in that case.  So in a way a

16 little bit of a preview, he did comply with terms and

17 conditions in that matter.

18            Regarding the issue of private security, I would just

19 say that is heretofore not unknown in federal cases in the

20 United States.  I've offered that to courts and have

21 received -- in one very big case the Court, a Federal District

22 Court Judge said let's make it happen and we did.  And so this

23 is not unknown.  I know that Ms. O'Connor whispered to me she's

24 had that before.  So having private security companies come in

25 to try to assure that somebody is going to comply with terms

1    and conditions is not uncalled for -- excuse me, is not unknown

2    to the courts.  So this is not something that we're just

3    picking out because Mr. Banks is an entertainer and might have

4    assets.  This is something that has been done in other cases

5    before.  We would never try to be the first one ever to do

6    something like that.  So this is not out of the ordinary.

7              And what we did was, based on the Court's

8    observations and concerns back in December, we spent time

9    talking to the company and said, hey, we need you to assure to

10   the Court, to the Government, to Pretrial Services that you

11   will be beholden to the Court to make sure he complies.  And so

12   I just want to clarify that for the Court.

13             And lastly, while I appreciate the Government's

14   argument on the issue of rap lyrics, I mean, yeah, that might

15   be a motion in limine as to the general sense of a continual

16   use by law enforcement and prosecution to try to take

17   somebody's music and consider that to be somewhat, you know,

18   incriminating in a case.  What we addressed was the very

19   specifics of this case and that is that somehow something was

20   done to celebrate, monetize, and somewhat be a musical

21   confession.  That was wrong.  That was false.  And I want to be

22   very clear that we do not consider the Motion to Dismiss moot

23   on June 2nd because in that motion, the Court should know, we

24   asked the Court secondarily to open up the Grand Jury

25   transcripts to us so we can see who said something to them that

1  was either -- that might have been negligent, we don't know,

2  but that was provably false.

3         So I just want to clear up, sure, we're used to the

4  battle about the general let's attack this musical genre

5  because it's the thing to do, but we're talking about this

6  specific instance that was reflected in Paragraph 6 of the

7  general facts is gone and it was hotly contested and that's

8  gone.  Whether or not they want to try to go after music in

9  general, sure, a motion in limine.  But this important issue is

10 gone from the Indictment.

11        Thank you.

12        **THE COURT:**  All right, thank you, Counsel.  Is there

13 anything further from the Government?

14        **MR. YANNIELLO:**  No, Your Honor.

15        **THE COURT:**  All right.  And nothing further from the

16 Defense?

17        **MR. FINDLING:**  No, Your Honor.

18        **THE COURT:**  All right.  The Application for

19 Reconsideration is based on the fact that there is new

20 information to be presented that was not considered at the

21 initial hearing.  The new information that the Defense points

22 to is the Second Superseding Indictment and the differences

23 between the allegations in the Second Superseding Indictment

24 from those in the First Superseding Indictment and then also

25 the security service's apparent willingness to somehow enforce

1    or report -- enforce court orders or report violation of court

2    orders.  Other than that, the bond conditions appear to be the

3    same.

4            I just wanted to ask the Defense if there's anything

5    else that is new information.  The amount of money changed, did

6    the amount of money also change?

7            **MR. FINDLING:**  It changed from property, but there

8    was substantially more cash.  We think it's approximately --

9            **THE COURT:**  Right.

10           **MR. FINDLING:**  -- the same amount.  It's just cash in

11   place of property.

12           **THE COURT:**  That's what I thought, the combination is

13   a little bit different.  All right.

14           So what is really the thrust of the argument is -- on

15   the Defense side is the change in the allegations from the

16   First to the Second Superseding Indictment.  And certainly the

17   admissibility of the lyrics and what brought about the change

18   in the Indictment are matters to be raised by the District

19   Court.  But that does not change this Court's finding from

20   December on either dangerousness to the community or risk of

21   flight.  I appreciate the argument that the allegations are

22   more general, but they also remain the most, the most serious,

23   as reflected in the potential punishment.  Even with the more

24   general language, the Indictment continues to allege that he

25   essentially orchestrated and ordered and recruited others to

1    find, track, and kill an individual who he had an incentive to

2    kill.  And the -- at the first detention hearing a number of

3    other prior -- his prior somewhat similar behavior in Chicago

4    was also addressed and that has not -- there's no challenge to

5    that.  Those circumstances remain the same.

6         So there are not changed circumstances presented that

7    would warrant reconsideration of the Order of Detention based

8    either on dangerousness or on risk of flight.

9         I appreciate the argument from the Defense that the

10   behavior regarding the use of other felons at the MDC maybe is

11   not uncommon.  Nonetheless, it shows a disrespect for the

12   rules.  And that is precisely the Court's concern with regard

13   to risk of flight.  More significantly, obviously, reflected in

14   his attempt to leave the country after learning of the

15   indictment of his co-conspirators.

16        So for all of those reasons the Application for

17   Review of the Detention Order is denied.

18        All right, is there anything further on this matter

19   from the Government?

20        **MR. YANNIELLO:**  No, Your Honor.  Just the matter of

21   the arraignment on the --

22        **THE COURT:**  Oh, the arraignment.

23        **MR. YANNIELLO:**  -- Second Superseding Indictment.

24        **THE COURT:**  Thank you for reminding me.  Yes.

25        All right, it's the Second Superseding Indictment.

1    I'll ask my Courtroom Deputy to please proceed.

2            THE CLERK:  Durk Banks, have you read or has the

3    statement of your rights been read to you by your attorney?

4            THE DEFENDANT:  Yes, ma'am.

5            THE CLERK:  Did you sign or did you authorize your

6    attorney to sign the Statement of Rights on your behalf?

7            THE DEFENDANT:  Yes, ma'am.

8            THE CLERK:  Has the Second Superseding Indictment

9    been read to you by your attorney?

10            THE DEFENDANT:  Yes.

11            THE CLERK:  Do you understand the substance of the

12    charges pending against you?

13            THE DEFENDANT:  Yes.

14            THE CLERK:  Counsel, how does your client intend to

15    plead?

16            MR. FINDLING:  We plead not guilty to the Second

17    Superseding Indictment.

18            THE CLERK:  Durk Banks, how do you plead to the

19    charges contained in the Second Superseding Indictment?

20            THE DEFENDANT:  Not guilty.

21            THE COURT:  All right.  Isabel, can you go ahead and

22    set forth the dates?

23            THE CLERK:  Jury trial is set for October 14th, 2025,

24    at 8:30 a.m. and Judge Fitzgerald is located in Courtroom 5A at

25    the First Street Courthouse, 350 West 1st Street, Los Angeles.

1          Oh, and the motion hearing is set for June 2nd, 2025,

2    at 1:30 p.m.

3          **THE COURT:**  All right.  Thank you, Counsel, for

4    reminding me of that.  Is there anything further?

5          **MR. YANNIELLO:**  No, Your Honor.

6          **THE COURT:**  Anything further from the Defense?

7          **MR. FINDLING:**  No, Your Honor.

8          **THE COURT:**  All right.  Thank you, Counsel.

9          **THE CLERK:**  Court is adjourned.

10         **(This proceeding was adjourned at 10:28 a.m.)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

    I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **November 20, 2025**
       Signed                                              Dated


*TONI HUDSON, TRANSCRIBER*