UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

### CRIMINAL MINUTES – GENERAL

Case No.    **CR 24-621(B)-MWF – 02, 04, 05, 06**                     Date:  February 13, 2026

Present: The Honorable:    MICHAEL W. FITZGERALD, United States District Judge

Interpreter    Not Applicable

| Rita Sanchez | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendant(s): | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| | Not | | | | Not | | |

**Proceedings:    (IN CHAMBERS) BANKS' MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S PROPOSED FRE 404(B) EVIDENCE [258]**

Before the Court is the Motion in Limine to Exclude Government's Proposed FRE 404(b) Evidence (the "Motion") filed by Defendant Durk Banks on October 7, 2025.  (Docket No. 258).  The Government filed an Opposition October 28, 2025.  (Docket No. 283).  Banks filed a Reply on November 10, 2025.  (Docket No. 289).

The Court held hearings on November 18, 2025, and January 7, 2026, but deferred ruling on the Motion.  Throughout this period until the hearing on this Motion on **February 9, 2026**, the parties filed a flurry of briefing on the issue:

- The Government filed a Supplemental Memorandum in Opposition to the Motion (the "Supplemental Opposition") on January 2, 2026.  (Docket No. 327).

- Banks and Defendant Deandre Wilson filed a Supplemental Brief in Support of the Motion (the "Supplemental Brief") on January 23, 2026.  (Docket No. 350).

- The Government filed a Response to Defendant Banks' Supplemental Brief (the "Response") on January 30, 2026.  (Docket No. 367).

- Defendants Banks and Wilson filed a Joint Reply (the "Joint Reply") on February 3, 2026.  (Docket No. 375).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## * * * R E D A C T E D * * *

### CRIMINAL MINUTES – GENERAL

- Finally, the Government filed a Supplemental Memorandum in Opposition to the Motion (the "Supplemental Response") on February 6, 2026.  (Docket No. 376).

As an initial matter, the Government initially indicated that it intended to introduce evidence surrounding an incident that occurred in 2022 in Chicago.  At the hearing, the Government withdrew the evidence for consideration.  The Court also expressed its tentative view based on the briefing that it was inadmissible under either Rules 404(b) or 403.  The Motion is therefore **DENIED *as moot*** as to that requested evidence.  References to that incident will not be admissible without first obtaining the express permission of the Court.

## I.    **RULE 404(B) NOTICE**

The Government has given notice of potential Rule 404(b) evidence in several instances.  The initial notice is dated September 1, 2025 ("September Notice").  (Docket No. 359 at Ex. A).  The Government then sent a Revised 404(b) Notice dated November 17, 2025 ("November Notice").  (*Id.* at Ex. B).  Finally, the Government sent a third Supplemental Notice dated January 16, 2026 ("January Notice").  (*Id.* at Ex. C).

Banks first argues that these notices provided by the Government were not specific enough under the 2020 amendment to Rule 404(b).  (Supp. Brief at 17-18).  But as Banks himself acknowledges, the heightened requirements of this amendment are meant to "prevent[] trial by ambush, and ensure[] that courts can evaluate admissibility based on the government's actual theory rather than post-hoc rationalization."  (*Id.* at 18).  As to the first concern, Banks cannot claim trial by ambush given that he is litigating this Motion well in advance of trial.  As to the second concern, again the fact that the Government provided advance notice of much of its 404(b) evidence mitigates the effects of any post-hoc rationalization, since the Government cannot be said to be sandbagging the defense by switching its relevance theories too close to trial.

However, should the Government seek to offer additional evidence under Rule 404(b) closer to trial, as the January Notice seems to indicate, the Government should take care that it strictly complies with the notice requirement to give Defendants fair notice of the evidence, particularly in light of these rulings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

## II.    EVIDENCE NOT SUBJECT TO RULE 404(B)

Both parties seem to agree that certain items of evidence are not "other acts" of Defendant Banks because they are not attributed to Banks, and thus do not fall within the ambit of Rule 404(b).  Specifically, the Ninth Circuit has held that admissibility under Rule 404(b) requires the showing that "the evidence must be sufficient to support a finding that the defendant committed the other act."  *See U.S. v. Bibo-Rodriguez,* 922 F.2d 1398, 1401 (1991).  Accordingly, because several pieces of evidence are not attributable to Banks, challenges to admissibility would seem to fall solely under Rule 403.  These items of evidence are:

- Surveillance footage and witness testimony related to the murder of D.B. in Atlanta on November 6, 2020.  (September Notice at I.1.)

- Public pressure from fans of Banks and OTF demanding that Banks exact revenge for D.B.'s murder.  (September Notice at I.4.)

Another item of evidence that seems to fall outside of Rule 404(b) are the comments made by Banks on a podcast.  While it is undisputed that Banks was the one who made the comments, the quote would seem to fall outside of Rule 404(b) because it does not appear to be propensity evidence.  The evidence consists of the following exchange:

- Banks was asked on a podcast if he was "triggered by the 'slide for Von' comments," and Banks responded, "[f]or some reason I just don't see them comments no more . . . for some odd reason . . . might be the water . . . we here though."  (Opp. at 8-9).

It is unclear why the Government indicated this evidence was subject to the strictures of Rule 404(b) in the September Notice, when the Government now seems to concede that it falls outside of Rule 404(b).  (*See* Opp. at 6-9).  Banks suggests that the Government benefits by casting this evidence as "inextricably intertwined" with its prosecution of the case in order to avoid the safeguards of even Rule 403.  (Reply at 1).  But the Government itself presents no argument or case law that this evidence should be exempt from Rule 403 because it is intertwined with its presentation of the case.  Accordingly, the Court will consider the evidence under the Rule 403 standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

A.    <u>November 2020 Murder of D.B.</u>

As to the surveillance footage and witness testimony related to the murder of D.B., the Government argues that it is relevant to show the motive for the crimes in this case.  The Second Superseding Indictment ("SSI") alleges that D.B. (aka "King Von"), who the parties agree was a close friend of Banks, was shot and killed following a physical altercation with T.B. at a nightclub in Atlanta, Georgia.  (Docket No. 147 ¶ 3).  It was putatively this murder of D.B. that prompted Banks to offer a bounty for the killing of T.B.  (*Id.*).

In response, Banks argues that there is "no probative value in delving into the facts and circumstances of the incident that led to D.B.'s homicide," and that the surveillance footage and witness testimony would only serve to improperly bolster the Government's theory that Banks sought revenge against T.B.  (Motion at 7-8).  Because Banks was not aware of the "details" of the incident, there is no need to present evidence of those details.  (*Id.*).  Moreover, in the Reply, Banks argues that the murder of D.B. was attributed to Timothy Leeks, and that because Banks did not target Leeks, Leeks' killing of D.B. "does not bear on [] Banks' purported motive in this case, where Leeks is not a victim."  (Reply at 2).

This evidence seems plainly relevant to the prosecution of the case.  Indeed, the fact that T.B. and D.B. were involved in an altercation prior to his murder is the foundation for the Government's theory of why Banks was motivated to put a bounty on T.B.  And Banks has only argued that this evidence would result in a "mini-trial" to establish these facts, given that "[w]hat the Government really seeks to admit is a historical fact" that D.B. and T.B. were involved in the altercation.  (Reply at 2).  But the Government indicates that this evidence will be coextensive with the presentation of its case, and in particular, ██████████████████.  (Opp. at 9).

Given the significant probative value of the evidence of the altercation, any time spent establishing the facts of what occurred on the evening of D.B.'s death is not needlessly cumulative or a waste of time under Rule 403, particularly considering the Government's representation that ████████████████ for these events.  Accordingly, the Motion is **DENIED** as to this surveillance footage and witness testimony.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# * * * R E D A C T E D * * *

**CRIMINAL MINUTES – GENERAL**

### B.    Public Comments from Fans

Next, the Government seeks to admit evidence of fan comments that appeared on Banks' X account and were authored by anonymous users, among other potential similar social media comments.  (*See* September Notice at I.4. (indicating that the social media comment evidence is "not limited to" the X comments)).  The Government argues that these comments are relevant because they show that Banks faced pressure from the public to avenge D.B.'s 2020 killing.  (*Id.*).

Banks makes several objections to this evidence: that it is inadmissible hearsay, that it would add delay to this case because it would require testimony to authenticate the comments and explain their meaning, and because they do not bear on Banks' state of mind since the Government cannot establish that Banks saw the comments.  (Motion at 15-16).

But the Court agrees with the Government that Banks' own statements indicate that he was aware of these types of social media comments.  In particular, Banks was asked on a podcast if he was "triggered by the 'slide for Von' comments," and Banks responded, "[f]or some reason I just don't see them comments no more . . . for some odd reason . . . might be the water . . . we here though."  (Opp. at 8-9).  In response, Banks argues again that he is not charged with seeking violence against D.B.'s killer, Leeks, and thus these comments urging Banks to seek revenge for D.B.'s killing are not relevant to motive.  (Reply at 2-3).  But the Court has already explained why the murder of D.B. is relevant to the motive for targeting T.B.

Accordingly, these comments may be admitted to show the effect that they had on Banks and the Motion is **DENIED**.  The probative value is not outweighed by any of the bases set forth in Rule 403.

### C.    Podcast Comments

As discussed above, these comments are relevant at least to establish that Banks was aware of the public pressure to avenge D.B.'s murder, and such public pressure is relevant to the Government's theory of motive for the crimes charged.  Accordingly, the Court rejects Banks' contention that the statement is minimally probative and irrelevant.  (Motion at 14).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

Banks' next argument is that the admission of these comments would necessitate further witnesses to explain the meaning of the comments. Banks suggests that the statements were mere hyperbole or "an example of a celebrity playing into online discourse as a method of marketing." (*Id.*). Banks argues this testimony would unduly delay the trial. (*Id.*). Banks further argues that he will invoke the Rule of Completeness to play the three-hour long podcast interview to avoid any "misunderstanding or distortion" by only presenting this one snippet. (*Id.*).

But the argument that presenting a competing witness to contest the meaning of Banks' statement or that invoking the Rule of Completeness will cause undue delay is unpersuasive. Again, the Government seeks to admit this evidence to establish that Banks was aware of the public pressure to exact revenge for D.B. and that this pressure contributed to his motive to exact revenge. These comments are thus not merely "minimally" probative but again are important to the Government's presentation of its case. That additional witnesses or additional portions of the podcast should ultimately be admitted at Banks' request therefore does not establish undue delay.

## III.    RULE 404(B) EVIDENCE

### A.    OTF Structure and Banks' Control Over OTF

The Government seeks to admit several pieces of evidence regarding the structure of OTF and Defendant Banks' control over OTF under Rule 404(b). (Opp. at 11-15 (Docket No. 283)). This evidence is:

- Instagram message showing Banks telling another rival "I got them hunting you …" that was discussed via text message to other alleged OTF members (September Notice at II.3.);

- Text thread showing Banks telling other OTF members that he was going to "pipe it up" in response to messages about a feud with another rival (September Notice at II.2.); and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

- Voice memo from OTF member ████████████ discussing OTF structure.
  (September Notice at II.4.).

The Court will address each in turn.

### 1. Instagram Message re: "I got them hunting you . . ."

This message was allegedly first sent on Instagram from Banks to another rival in April
2023, and states in full: "I got them hunting you up ads better have 3ski mask on."  (September
Notice at II.3.).  The Government acknowledges that the recipient of the message is "another
rival" of Banks and does not argue that the rival was involved in the crimes charged here.
Rather, the Government asserts in its Opposition that a screenshot of the Instagram message
was sent via text message to Wilson ███████████████████████████████████
████████ responded to his text message warning Banks to protect himself "in light of the threat,
stating: 'If you talk to them blood on the dm text them in vanish mode.'"  (Opp. at 12).

As to the purpose for admitting these texts, the Government asserts that the message
"ma[kes] clear that [Banks] ('I got') — not another OTF member — has control over OTF
associates that were 'hunt[ing]' the rival."  (Opp. at 12-13).  As such, the message demonstrates
Banks' modus operandi of threatening rivals, funding acts of violence against them, and Banks'
control over his OTF associates.  (Opp. at 13).  Banks responds that there is no evidence that he
ever followed through with any putative "threat" contained in the message, and thus it is pure
propensity evidence meant to prove that Banks is a violent person.  (Reply at 4-5).

As the Government argues, the Ninth Circuit has held that "evidence of prior criminal
acts may be relevant in conspiracy cases to show the background and development of the
conspiracy."  *U.S. v. McKoy,* 771 F.3d 1207, 1214 (9th Cir. 1985).  "Such evidence may
'explain the nature of the relationship' between co-conspirators while placing 'their transaction
in context for the jury[.]'"  *U.S. v. Jones,* 982 F.2d 380, 382 (9th Cir. 1992) (quoting *McKoy,*
771 F.2d at 1214).  Accordingly, evidence of prior acts may be admissible to demonstrate "the
existence of a criminal association and plan."  *Id.*

That is the case here.  As the Government argues in its Opposition, the relevance of this
evidence lies not in the content of the Instagram message containing the alleged threat to the
rival, but rather in the act of Banks sending the screenshot to Wilson ████████.  This evidence
thus illustrates the nature of the conspiratorial relationship and demonstrates the existence of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

### CRIMINAL MINUTES – GENERAL

criminal association.  The Government further argues that after statements made at the November 17, 2025, hearing, it appears that one of Banks' defense theories will be that OTF was only a legitimate association among musical artists, rather than a criminal enterprise. (Supp. Opp. at 4-5).  Accordingly, the need for the evidence of prior threats against rivals discussed by OTF members is high to show that OTF was not merely a group formed for musical purposes.  (*See id.*).  Taken together, the Government thus clears the hurdle under Rule 404(b) that this evidence is admissible for another purpose beyond demonstrating a general criminal disposition.  *See McKoy,* 771 F.2d at 1213-14 (explaining the "inclusionary" approach under Rule 404(b) to admit evidence "except where the evidence proves *only* the defendant's criminal disposition").

The last question is whether the probative value of this evidence is outweighed by prejudice or another basis under Rule 403.  The Court agrees that this evidence has a high probative value insofar as Banks intends to argue that OTF was only formed for legitimate purposes.  (*See* Supp. Opp. at 4-5).  The fact that Banks discussed putative threats against rivals undercuts this assertion by the defense.  While Banks has argued that the evidence also carries an inference of propensity for violence, the probative value outweighs the relative prejudice in this instance.  The Motion is therefore **DENIED** as to this evidence.

### 2.  Text Thread re: "pipe it up"

Next, the Government seeks to admit another text thread putatively between Banks, Wilson, ██████████████████████████████.  (*See* September Notice at II.2.).  In this text thread, the group is discussing a feud with another third party, putatively in the context of whether this third party was "properly retaliating for D.B.'s death."  (*See id.*).  Banks writes: "I'm finna pipe it up[,]" to which ████████ "Blood it's green [emoji of car and green light] getting shit together now no phones."  (*Id.*).  The Government contends ████████
████████████████████████████████████████████████████
██████████████████████  (*Id.*).  The Government will also present evidence to establish that "pipe it up" is a "street reference to the use of a firearm." (Opp. at 13).  The Government argues that these text messages are thus relevant for the same reasons as set forth above with respect to the Instagram message: to prove the criminal enterprise between OTF members, and to show knowledge, intent, plan, and/or modus operandi. (*See id.* at 13-15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

Banks responds that the Government fails to introduce other messages in the same text thread that mitigate the meaning of the text messages — in particular, that Banks later clarifies in the message thread "that's all . . . just letting y'all know I'm finna speak up." (Motion at 20). Banks thus asserts that he would invoke the Rule of Completeness to have the entire text thread presented to the jury. (Reply at 4). Banks also argues that the meaning of the "pipe it up" phrase meant that he would "speak up," as in "pipe up," and the evidence therefore has no probative value. (*Id.*).

The Court disagrees that there is no probative value to this evidence, even considering the broader context of the messages. While the jury may ultimately choose to believe Banks' interpretation of the messages and the meaning of "pipe it up" over the Government's, the evidence is still relevant under the Government's theory that it helps explain both that OTF is engaged in a criminal enterprise and, more so than the prior Instagram message, that Banks is the leader of OTF. Accordingly, it helps to explain the "background and development" of the conspiracy. *See U.S. v. Smith,* 282 F.3d 758, 768 (9th Cir. 2002).

As to Rule 403, Banks contends that the introduction of this evidence will unduly delay the trial, particularly given the need to define the phrase "pipe it up." (*See* Motion at 21). But this argument is not persuasive insofar as it only identifies the need for competing witnesses to define this one phrase. Moreover, the Government has identified that this evidence will likely come in through the testimony ██████, and thus it appears it will be largely coextensive with ████████████. Accordingly, the Motion is **DENIED** as to this evidence.

### 3. Voice Memo

The Government finally seeks to admit evidence in the form of a voice memo recorded by ████████████████. (September Notice II.4). The voice message putatively "conveys direction" from Banks about how his funds should be spent, including "he want people to get sliders and stuff like that for sure." (*Id.*). In the voice memo, ███ only refers to someone named "Blood" directing the use of the funds.

Banks responds that there is no evidence that "Blood" was a reference to Banks. (Reply at 5-6). Moreover, Banks contends that the messages surrounding the voice memo reveal that ████████ were messaging about someone named "Unk," not Banks. (*Id.*). The Government explained at the hearing ████████████████████████

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

███████████████████████████████████████████. The Government asserts again that the evidence is relevant to show the leadership structure of OTF. (*See* Opp. at 11-12).

While Banks is free to argue that the voice memo is not about him, the Government may present the evidence as it would be relevant to show the structure of OTF and the relationships between Banks and co-conspirators. Because the evidence has probative value into Banks's leadership of OTF, ████████████████ and other allegedly criminal activities is not unduly prejudicial. Accordingly, the Motion is **DENIED** as to the voice memo.

**B.    May 2021 Attempted Killing of T.B.**

The Government also seeks to admit evidence of surveillance footage and witness testimony related to the attempted murder of T.B. on May 2, 2021. (September Notice at I.2.). The Government argues that it is direct evidence of the stalking charge, and is at least inextricably intertwined with the charges. (Opp. at 10). This evidence is subject to Rule 404(b) as a prior act because █████████████████████████████████████████, and thus carries a potential propensity inference.

The parties primarily debate the holding of *U.S. v. Serang,* 156 F.3d 910 (9th Cir. 1998) as to whether this evidence is inextricably intertwined with the charges. In *Serang,* considering an underlying verdict for arson, the Ninth Circuit held that evidence of two prior, unsuccessful arson attempts "explained both the nature of [the defendant and a third party's] conspiratorial relationship, and how and why the fire was set in the manner that it was." *Id.* at 915-16. Perhaps predictably, the Government emphasizes that admissibility was premised on the "nature of [the] conspiratorial relationship" while Banks emphasizes that the holding was premised on the "unique way" the arson was carried out. (*Compare* Opp. at 10-11 *with* Reply at 3-4).

The Court reads *Serang* more in line with the Government's interpretation. In particular, in explaining whether evidence is "inextricably intertwined" with the charged crimes, the *Serang* court first held that the testimony of the prior acts "constitut[ed] a part of the transaction that serves as a basis for the criminal charge," because it "show[ed] the background and development of the conspiracy." *See* 156 F.3d at 915. The court went on to state that "[t]he government is not prohibited from introducing such evidence 'simply because the defendant is indicted for less than all of his actions,'" citing to *U.S. v. Williams,* 989 F.2d 1061, 1070 (9th Cir. 1993). *Id.* And digging into *Williams,* in turn, the Ninth Circuit there affirmed the admission of testimony of a cooperating witness who testified that he had purchased cocaine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

### CRIMINAL MINUTES – GENERAL

from both defendants at different times throughout the alleged drug conspiracy. *See* 989 F.2d at 1070. The testimony of such "uncharged conduct was inextricable from and provided necessary context for [the witness's] testimony about the charged conduct." *Id.*

The Government contends that the evidence of the 2021 attempted murder will come in through the testimony ██████████████████████████████████████████████████████ ████████████████████████████. (Opp. at 10, n.8). Accordingly, as in *Williams,* the testimony regarding the uncharged 2021 shooting provides necessary context ████████████████████████████████. The evidence of the 2021 shooting is thus inextricably intertwined with the underlying offense because it is part of the same transaction as the stalking charge alleged here.

Banks argued at the hearing ██████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████. As the Government argues, the "reliability threshold" for admissibility under Rule 404(b) "is not a high one, and the testimony of a single witness can be sufficient." *U.S. v. Johnson,* 132 F.3d 1279, 1238 (9th Cir. 1997).

As to undue prejudice under Rule 403, evidence implicating participation in an uncharged shooting is certainly prejudicial. But given the evidence's high probative value to the stalking charge, the relevance is not substantially outweighed by the prejudice.

The Motion is thus **DENIED** as to evidence of this 2021 shooting.

## IV.    MUSIC ADMISSIONS

Throughout the three 404(b) Notices, the Government has indicated that it will seek to introduce aspects of Banks' music, including lyrics and music videos of several of Banks' songs. Banks makes specific objections to certain songs' admissibility along with more general objections to the admissibility of rap lyrics, so the Court considers this type of evidence separately here.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### * * * R E D A C T E D * * *

**CRIMINAL MINUTES – GENERAL**

A.    <u>**Admissibility of Music Videos**</u>

As an initial matter, the Government seeks to introduce not just lyrics or recordings of the songs, but also snippets from the music videos where these lyrics are uttered.  (*See* January Notice).  In the January Notice, the Government does not explain why the video itself may be relevant.  The Government only puts forward a relevance theory for the video in the Response.  (*See* Response at 9-10).  There, the Government contends that the videos contain "key visual depictions" that (1) provide context for the lyrics; (2) shows the relationships between the alleged conspirators; and (3) proves that these conspirators were provided with rewards, *i.e.,* "prominent placement in music videos," following S.R.'s murder.  (*See id.* at 9).

By and large, these are not compelling reasons to admit the videos.  Most of these purposes could be accomplished by admitting photographic snapshots from the videos depicting certain individuals together, rather than showing the actual video.  And where the videos contain depictions of these individuals holding guns and wads of cash, the videos themselves are clearly prejudicial.  Showing the videos is therefore not justified where less prejudicial alternatives exist to establish the same facts.

Nonetheless, at the hearing, the Government represented that there was a music video featuring co-conspirators and, in particular, Defendant Wilson, that functioned as a reward for the alleged criminal conduct at issue in this case.  Such a video would thus be highly probative of the charged conduct in order to show that Wilson or others had an incentive to agree to the charged conduct, believing a reward was forthcoming.  Assuming the Government can lay a sufficient foundation to support this relevance theory, the Court would be inclined to admit such video(s) depicting Defendant Wilson and other relevant co-conspirators, assuming after viewing the video that it was not unduly prejudicial.  The Government may also admit one video that is meant to depict the relationship with Defendant Wilson, again assuming the particular video is not unduly prejudicial.  The Court is not aware of other videos that will be offered to show such a reward as to the other Defendants.

The Motion is therefore **GRANTED *without prejudice*** as to the music video footage, as the Government may seek to introduce the video that serves as proof of the bounty rewarded to the alleged co-conspirators in this action.

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

B.    <u>Admissibility of Rap Lyrics</u>

The parties spend much time briefing whether the rap lyrics should be admitted.  While
somewhat unclear, the disputes appear to boil down to challenges under Rule 403, asking
whether the lyrics, either by their specific content or by the general nature of rap, are unduly
prejudicial when weighed against the potential relevance (if any) of the lyrics.

As to relevance, the Government argues generally that the lyrics are potentially relevant
for several purposes: (1) to show the "background and development" of the conspiracy; (2) to
corroborate anticipated testimony that the conspirators acted at Banks' direction; (3) to explain
the motive for attempting to kill T.B.; and (4) to show the association between members of
OTF.   (*See* Response at 2-3).  The Government then goes through specific lyrics in detail,
providing a chart with the lyrics and the Government's theory of relevance.  (*See id.* at 6-9).

As an initial matter, the excerpted lyrics in the chart in the Government's Response are
much narrower than the lyrics identified in the January Notice.  Accordingly, the Court
construes the lyrics in the chart as the lyrics intended to be introduced at trial, supplanting the
more expansive set of lyrics identified in the January Notice.

In response to the chart of lyrics, Banks argues that the cited lyrics are "entirely non-
specific," in that they do not reference the alleged victims "nor any circumstances of this case."
(Joint Reply at 3).  Banks also takes issue with the lack of specificity around the timing of these
putative lyrical admissions, given that their relevance depends, in part, on whether the lyrics are
recounting facts about this particular murder.  (*See id.* at 6-8).

The Court will thus go through each proffered theory of relevance identified in the
Government's chart to determine whether the lyrics are indeed relevant to that theory and, if so,
whether the relevance is outweighed by prejudice.

### 1.  Banks and OTF Motive for Seeking Revenge

The Government asserts that the following lyrics are relevant for establishing motive to
seek revenge for D.B.'s murder:

1.    Banks: "They be on my page like 'Slide for Von', I know they trollin me . . . Got it
       back in blood, y'all just don't know, that's how it 'posed to be";

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### * * * R E D A C T E D * * *

**CRIMINAL MINUTES – GENERAL**

2.    Banks: "Don't respond to shit with Von. I'm like, 'fuck it, you trippin', go get your gun'. They droppin' locations, I'm getting' it done. Fuck tweetin', we slidin', the feds are comin'"

The Court agrees that these lyrics are relevant for the stated purpose of showing motive for D.B.'s murder.  Just as the podcast comments above demonstrated awareness of public pressure to exact revenge, these lyrics are similarly relevant for helping to establish Banks' potential motive in this action.  Moreover, although the second lyric refers to violence ("get your gun"), the discussion of violence in conjunction with getting revenge for "Von" makes the evidence more probative than prejudicial in this instance.  The Motion is **DENIED** for these lyrics.

### 2.  Banks' Leadership of OTF and Placing Bounties

The Government asserts that the following lyrics are relevant for establishing that Banks was the leader of OTF and placed bounties:

3.    Banks: "We ain't tryna make peace with them boys . . . I pay rent they're my shooters."
4.    Banks: "I don't want no n****s who you catch, I want the one  I paid for . . . Trollin' ass, we shot your homie."
5.    Banks: "Popping traffic, we in Cali', ride through Beverly Hills with choppers . . . Bounty hunter."
6.    Banks: "For the n****s who can carry, I'll buy 'em 50k in guns."

***Timing:***  The third and sixth lyrics on this list were uttered in songs that premiered after S.R.'s murder.  (*See* Response at 6-7, n.8, 11).  However, the fourth lyric was recorded a year prior to S.R.'s death, according to Banks.  (*See id.* at 7, n.9).  Additionally, the Government did not offer a date as to the fifth lyric.  (*See id.* at 7, n.10).

***Probative Value:***  As an initial matter, these lyrics do not seem to establish that Banks is the leader of OTF, and thus fail as to relevance for that purpose.  Rather, it appears that the Government seeks to primarily establish through these lyrics that Banks placed bounties on rivals.  (*See* Response at 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

While the Ninth Circuit acknowledges that drawing a line between propensity and modus operandi evidence is sometimes difficult, the court has characterized M.O. evidence as that which "establishe[s] a way of behavior that could be reasonably relied upon by a juror to convict [the defendant] of the charged offensives." *See U.S. v. Gonzalez,* 533 F.3d 1057, 1064 (9th Cir. 2008).  To the extent that the lyrics communicate Banks bragging about placing bounties, or even his willingness to place a bounty, the Court determines that the lyrics cross the Rule 404(b) threshold as being admissible for a purpose other than propensity.

However, having read the briefing and heard arguments at the hearing, the Court cannot presently determine the probative value of these proffered lyrics in order to conduct balancing under Rule 403, particularly as to the precise meaning of these lyrics beyond that they reference the concept of placing bounties.  If it is the Government's contention that a reasonable jury could understand the meaning of the words used in the lyrics and the Government can draw out this meaning in closing arguments, then the Court can assess Rule 403 from that basis.  If it is the Government's intention to offer expert testimony to help understand the relevance of the lyrics, then the Government should tell the Court precisely what testimony the expert will offer. The Court will determine a date by which to address these issues at the next hearing.

### 3. Relationship Between Banks and Wilson

The Government next asserts that the following lyrics are relevant for establishing that Wilson was one of Banks' "trusted co-conspirators and rewarded hitmen":

7.   Banks: "Got Dede with me Threat, no, Big Threat . . . Block war, I got Dede with me, he a block boy. Hot boys, got so many guns, we feel like Glock boys";

8.   Wilson: "Whatever you with, I'm with it Hop in the car with the gang, then you know it's all pressure . . . The members pop out with switches and you know they so extra . . . Knock 'em off up close, OTF, we don't do long distance . . . Brain missin', now you know a n\*\*\*a top off 10K just to get a n\*\*\*a knocked off";

9.   Wilson: **"**We got time to slide, the only thing we duckin' is the jakes [police]. . . Grab the Glock and it ain't no safety . . . All my n\*\*\*\*s, they fightin' cases, Murder ones, they beatin' the state";

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# * * * R E D A C T E D * * *

## CRIMINAL MINUTES – GENERAL

10.    Wilson: "I done masked up with gorillas, hundred shots up in them sprinters. If he died, that's what he get, hundred shots dumped in his whip. I take pride in doin' hits, go and slide and do a blitz. Your homie died 'cause we ain't miss";

*Probative Value:*    As to these lyrics, the Government again overestimates the proposed relevance.  Certainly it may be germane to the conspiracy charges against Banks and Wilson that the two had a close relationship, but the lyrics here go far beyond simply alleging this fact. In particular, the Court discerns no relevance whatsoever as to the following portions of lyrics:

- Banks: "Hot boys, got so many guns, we feel like Glock boys";
- Wilson: "Brain missin', now you know a n***a top off 10K just to get a n***a knocked off"
- Wilson: **"**We got time to slide, the only thing we duckin' is the jakes [police]. . . Grab the Glock and it ain't no safety . . . All my n****s, they fightin' cases, Murder ones, they beatin' the state";
- Wilson: "I done masked up with gorillas, hundred shots up in them sprinters. If he died, that's what he get, hundred shots dumped in his whip. I take pride in doin' hits, go and slide and do a blitz. Your homie died 'cause we ain't miss";

These portions of the lyrics do not serve the purpose of establishing a relationship between Banks and Wilson.  Rather, they only serve to underscore the prejudicial content of the songs as discussions of violence.  Accordingly, the Motion is **GRANTED** as to lyrics numbers 9 and 10 in their entirety, and as to portions of lyrics numbers 7 and 8.  What remains after striking these portions from 7 and 8 are the following:

7.    Banks: "Got Dede with me Threat, no, Big Threat . . . Block war, I got Dede with me, he a block boy."
8.    Wilson: "Whatever you with, I'm with it Hop in the car with the gang, then you know it's all pressure . . . The members pop out with switches and you know they so extra . Knock 'em off up close, OTF, we don't do long distance . . ."

*Balancing*:    As to what is left from lyric number 7, there is at least some relevance to establish that "Dede" (who the Government can presumably establish is Wilson), is close with Banks.  Nonetheless, the lyric is also somewhat prejudicial given that it allows a jury to infer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

that Dede is a "threat," and therefore a violent person.  But this language is certainly not as prejudicial as other overt descriptions of violence contained in other lyrics.  Accordingly, the prejudicial effect is not outweighed by the probative value of this pared down lyric.  The Motion is therefore **DENIED** as to the remaining lyric.

As to lyric number 8, to the extent the Court can understand the meaning of the lyric, it seems to again implicate violent acts.  It does, however, also establish that OTF may be a criminal enterprise, given the reference that OTF "knock[s]" people "off up close."  In view of the potential defense that OTF was only a legitimate musical enterprise, this lyric has probative value to establish that it operated as a criminal enterprise, as well.  Accordingly, while there may be some inference of violence from the lyric, it would not be outweighed by the probative value.  The Motion is therefore **DENIED** as to the remaining lyric.

### 4.  Similarity with Charged Crimes

The Government asserts that the following lyrics are relevant because they are "striking[ly]" similar to the conduct charged in this case:

11.  Wilson: "We spinned his block, we pop that car, I'm on his ass, I hate to wait . . . I never heard of dude, only time I heard was on the news";
12.  Wilson: "We don't shoot out cars, foenem hoppin' out and hawk you down. And I'm close enough to ask that n***a how this chopper sound";
13.  Banks: "Before they spin, told the tints darker' . . . Go. Fool his ass, he think we buyin' some cars, we hop out, scoom his ass. Fool his ass, he ain't paying attention to this car 'cause we got Uber tags"

***Timing***:  Lyric number 11 "premiered" on May 28, 2023, and lyric number 12 premiered on July 21, 2023.  Lyric number 13 was uttered in an audio recording seized from a co-conspirator's cellphone.  The Government does not appear to attach a particular date to lyric number 13.

***Probative Value:***  The SSI recounts that the co-conspirators procured cars, ski masks, and firearms that were used to "find, track, and kill T.B."  (SSI ¶ 3).  Therefore, the "striking" similarity between these lyrics and the conduct charged here is essentially that Banks and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## * * * R E D A C T E D * * *

### CRIMINAL MINUTES – GENERAL

Wilson discuss riding in cars, exiting the car, and shooting their putative victims. While these similarities are thus somewhat overstated, these lyrics are certainly closer to specifically stating the M.O. of these charged crimes than the more general lyrics regarding bounties, discussed above. Accordingly, there is some moderate level of relevance to the lyrics. The question thus becomes whether the relevance is substantially outweighed by the prejudicial effect of the lyrics.

The case that comes closest to assisting the Government in balancing under Rule 403 is *U.S. v. Stuckey*, 253 Fed. Appx. 468, 482 (6th Cir. 2007). There, the Sixth Circuit held that the district court did not abuse its discretion by admitting rap lyrics where the defendant admitted that he "kills 'snitches,' fills their bodies with holes, wraps them in blankets, and dumps them in the road," where the charged crime consisted of precisely this series of events. *Id.* at 482-83. Elsewhere, the *Stuckey* court acknowledged that the district court admitted the lyrics "not as fiction, but as fact—autobiographical statements of acts relevant to the case." *Id.* at 483. Therefore, while the court acknowledged that there was some danger of an inference of propensity, the "higher probative value" of the lyrics was not substantially outweighed by the potential for prejudice in that instance. *See id.*

The probative value of these lyrics falls somewhere between the lyrics admitted in *Stuckey* and the lyrics related to placing bounties discussed above. But unlike in *Stuckey,* there is no inference that the lyrics here are "autobiographical" of the events involved in these charges — indeed, as Banks points out, there is virtually no evidence of the timing of when these lyrics were written or even recorded, because the Government only named the putative "premiere dates." Accordingly, the most that can be said is that these are exemplary of modus operandi, because the Government has not established that these lyrics were referring to the murder at issue here.

**Balancing:** But as the *Stuckey* court acknowledged, there is certainly a danger of unfair prejudice given the content of the lyrics — which, here, explicitly reference committing acts of violence — apart from the probative value. Moreover, there is reason to believe that this evidence is cumulative and will unduly delay the trial. Indeed, the Government has witnesses to assist it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so it is unclear why these lyrics are not cumulative of that testimony. Finally, particularly as to these lyrics when compared with the others, each line will likely necessitate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CRIMINAL MINUTES – GENERAL

expert testimony to establish the meaning of the words used, delaying the trial for evidence that is only moderately probative.

Accordingly, the Motion is **GRANTED** as to these lyrics.

## V.    CONCLUSION

The Court therefore rules as follows:

- The Motion is **DENIED** as to the surveillance footage and witness testimony pertaining to the November 2020 murder of D.B.
- The Motion is **DENIED** as to the public comments from fans to show their effect on Banks.
- The Motion is **DENIED** as to the podcast comment made by Banks.
- The Motion is **DENIED** as to the Instagram message and related text messages between Banks and other alleged OTF members re: "I got them hunting you …."
- The Motion is **DENIED** as to the text message thread where Banks writes "I'm finna pipe it up."
- The Motion is **DENIED** as to the voice memo from ██████████ .
- The Motion is **DENIED** as to the surveillance footage and witness testimony related to May 2021 attempted killing of T.B.
- The Motion is **DENIED** as to the following lyrics:
  - Banks: "They be on my page like 'Slide for Von', I know they trollin me . . . Got it back in blood, y'all just don't know, that's how it 'posed to be";
  - Banks: "Don't respond to shit with Von. I'm like, 'fuck it, you trippin', go get your gun'. They droppin' locations, I'm getting' it done. Fuck tweetin', we slidin', the feds are comin'"
  - Banks: "Got Dede with me Threat, no, Big Threat . . . Block war, I got Dede with me, he a block boy."
  - Wilson: "Whatever you with, I'm with it Hop in the car with the gang, then you know it's all pressure . . . The members pop out with switches and you

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

**CRIMINAL MINUTES – GENERAL**

know they so extra . Knock 'em off up close, OTF, we don't do long distance . . ."

- The Motion is **GRANTED** as to the music video footage, although screenshots may be permissible.  The Motion is **GRANTED** *without prejudice* to the extent the Government may offer music video(s) that functioned as a "bounty" or reward for the acts charged and for one video depicting Wilson and Banks together.
- The Motion is **GRANTED** as to the following lyrics:
  - Wilson: "We got time to slide, the only thing we duckin' is the jakes [police]. . . Grab the Glock and it ain't no safety . . . All my n****s, they fightin' cases, Murder ones, they beatin' the state";
  - Wilson: "I done masked up with gorillas, hundred shots up in them sprinters. If he died, that's what he get, hundred shots dumped in his whip. I take pride in doin' hits, go and slide and do a blitz. Your homie died 'cause we ain't miss";
  - Wilson: "We spinned his block, we pop that car, I'm on his ass, I hate to wait . . . I never heard of dude, only time I heard was on the news";
  - Wilson: "We don't shoot out cars, foenem hoppin' out and hawk you down. And I'm close enough to ask that n***a how this chopper sound";
  - Banks: "Before they spin, told the tints darker' . . . Go. Fool his ass, he think we buyin' some cars, we hop out, scoom his ass. Fool his ass, he ain't paying attention to this car 'cause we got Uber tags"

As to the lyrics referencing a bounty, the Court may permit these lyrics to be admitted if the Government can adequately explain their probative value in the context of how they will be presented and admitted at trial.  Without understanding the probative value of these lyrics and how the lyrics will become admissible, the Court is presently unable to conduct Rule 403 balancing.  The Court will discuss this topic with the parties at the next hearing.  These lyrics are:

- Banks: "We ain't tryna make peace with them boys . . . I pay rent they're my shooters."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# * * * R E D A C T E D * * *

### CRIMINAL MINUTES – GENERAL

- Banks: "I don't want no n****s who you catch, I want the one I paid for . . . Trollin' ass, we shot your homie."
- Banks: "Popping traffic, we in Cali', ride through Beverly Hills with choppers . . . Bounty hunter."
- Banks: "For the n****s who can carry, I'll buy 'em 50k in guns."

**IT IS SO ORDERED.**